
DA 07-0551

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 57

IN THE MATTER OF

A.H.D.,

     Youth in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DN-06-022(A),
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

     Robin A. Meguire, Attorney at Law, Great Falls, Montana

     For Appellee:

     Honorable Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

     Ed Corrigan, County Attorney; Katie F. Schulz, Deputy
County Attorney, Kalispell, Montana

     Robert Allison, Attorney at Law, Kalispell, Montana (Youth)

Submitted on Briefs: January 8, 2008

Decided: February 20, 2008

Filed:

_____
               Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 A.M.D. and A.A.D. appeal from the order of the District Court for the Eleventh Judicial District, Flathead County, terminating their parental rights to A.H.D. We affirm.

¶2 The issue on appeal is: Did the District Court abuse its discretion in terminating A.M.D.'s and A.A.D.'s parental rights to A.H.D?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 A.M.D. (hereinafter "Father") and A.A.D. (hereinafter "Mother") are the parents of three children: S.D., T.D., and A.H.D. A.H.D. was born on April 8, 2006, in Whitefish, Montana. Prior to A.H.D.'s birth, the Montana Department of Public Health and Human Services (DPHHS) removed S.D. (born November 20, 2002) and T.D. (born December 19, 2003) from their parents' care and custody and placed the children in foster care.

¶4 DPHHS removed S.D. and T.D. from their parents' home in rural Lake County, alleging that the home was unkempt and that there was a potential for neglect and abuse of the children. DPHHS prepared a treatment plan, which the District Court for the Twentieth Judicial District, Lake County, approved on February 15, 2005. The treatment plan identified several grounds for S.D.'s and T.D.'s removal from the family home, including: poor hygiene in the children, lack of regular bathing of the children and failure to change diapers regularly; lack of a set bedtime for the children; disarray in the home including overflowing garbage, dirty dishes, and animal waste; broken windows, no smoke alarm, and no working lights in the home; Father's extremely limited role in caring for the children due to his frequent absence as a long haul truck driver; and

2

allegations that Mother failed to properly administer medications to the children. Shortly after DPHHS removed S.D. and T.D. and placed the children in foster care, the parents moved to Whitefish, Montana, where A.H.D. was born.

¶5 Upon her discharge from the hospital, DPHHS placed A.H.D. in foster care with her siblings in Lake County. On April 11, 2006, the Deputy Flathead County Attorney, on behalf of DPHHS, filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Temporary Legal Custody with the District Court. DPHHS asserted that it had probable cause to believe that A.H.D. was abused or neglected or in danger of being abused or neglected. DPHHS also alleged that there was sufficient evidence that A.H.D. was a youth in need of care based on the parents' inability to safely and appropriately parent A.H.D. DPHHS attached an affidavit to the petition from social worker Lori Schlenz.

¶6 The next day, the District Court entered an Order to Show Cause, Order Granting Emergency Protective Services and Notice of Show Cause Hearing. The District Court found that there was probable cause to believe that A.H.D. was abused or neglected or in danger of being abused or neglected and that immediate protection of the child was required. The District Court appointed a guardian ad litem for A.H.D. and ordered that a show cause hearing be held on April 28, 2006. The court held the hearing and found A.H.D., by a preponderance of the evidence, to be an abused or neglected child, designated her as a youth in need of care, and granted the State's petition for emergency protective services and temporary legal custody.

3

¶7    While A.H.D.'s matter was pending, the Lake County District Court entered an order terminating Father's and Mother's parental rights to S.D. and T.D. on June 26, 2006 (hereinafter "Lake County termination order"), after finding that the parents failed to comply with the majority of the treatment plan objectives. The court noted that a licensed clinical psychologist found that Mother had little capacity for true intimacy or true self-reflection and exhibited symptoms of depression, moodiness, and passive-aggressive behavior. The District Court noted that Mother quit therapy after a few sessions and failed to return. The District Court also found that the parents failed to attend parenting classes and cancelled scheduled appointments. In regard to the family's living environment, the District Court found that DPHHS was unable to inspect the parents' Whitefish home due to a lack of cooperation from the parents. The District Court found that the parents failed to contact the social worker on a regular basis, and when the parents did call, unless prompted, they failed to inquire as to the welfare of their children. Based on these findings, the court concluded that Father and Mother failed to comply with the treatment plan, and that the conduct or condition rendering them unfit was unlikely to change within a reasonable time.

¶8    Two months after the termination of Father's and Mother's parental rights to S.D. and T.D., DPHHS filed a Petition for Determination that Preservation or Reunification Services Need Not be Provided, in regard to A.H.D., pursuant to § 41-3-423(2), MCA. The parents filed a motion to dismiss the State's petition, and the District Court held a two-part hearing on the petition on December 18, 2006, and February 9, 2007. Father,

4

Mother, social worker Schlenz, and visitation specialists Kelli Becker and Syndee Hunter testified at the hearing.

¶9 On March 12, 2007, the District Court issued an Order Determining that Preservation or Reunification Services Need Not be Provided, and Setting Permanency Plan Hearing (hereinafter "March 12 order"). The court made extensive findings of fact regarding Father's and Mother's parenting issues, the previous termination of their parenting rights, their failure to comply with the treatment plan, and their failure to attend visitation sessions with A.H.D. The court specifically found that the circumstances related to the termination of Father's and Mother's parental rights to S.D. and T.D. were relevant to their ability to adequately care for A.H.D. Pursuant to § 41-3-423(2), MCA, the court ordered that DPHHS need not make efforts to provide preservation or reunification services to Father and Mother.

¶10 The District Court subsequently approved DPHHS's permanency plan for A.H.D. Shortly thereafter, DPHHS filed a Petition for Termination of Parental Rights with Right to Consent to Adoption and Notice of Hearing. The court held a hearing on June 8, 2007, and granted the State's petition. In its Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights with Right to Consent to Adoption and Granting Permanent Legal Custody (hereinafter "termination order"), the court incorporated the findings and conclusions of the March 12 order and took judicial notice of the prior proceedings, including the testimony at the two hearings. The court found that the parents' inability to satisfy the elements of the treatment plan for S.D. and T.D., continuing concerns with their parenting deficiencies, their inability to improve their parenting skills, and their

5

failure to visit A.H.D. when given opportunities to do so, indicated their inability to exercise their fundamental parental rights. The court found and concluded that the reasons for the involuntary termination of Father's and Mother's parental rights to S.D. and T.D. were relevant to their ability to adequately care for A.H.D., and that the best interests of A.H.D. would be served by terminating the parent-child relationship. This appeal followed.

**STANDARD OF REVIEW**

¶11   We review a district court's decision to terminate an individual's parental rights to determine whether the lower court abused its discretion. *In re A.S.*, 2006 MT 281, ¶ 24, 334 Mont. 280, ¶ 24, 146 P.3d 778, ¶ 24. Our review for abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re A.S.*, ¶ 24.

¶12   However, because a parent's right to the care and custody of a child is a fundamental liberty interest, the right must be protected by fundamentally fair procedures. *In re D.B.*, 2007 MT 246, ¶ 17, 339 Mont. 240, ¶ 17, 168 P.3d 691, ¶ 17. Prior to terminating an individual's parental rights, a district court must adequately address each applicable statutory requirement. *In re D.B.*, ¶ 17. "To satisfy the relevant statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings." *In re Custody and Parental Rights of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, ¶ 13, 109 P.3d 232, ¶ 13. We review a district court's findings of fact to determine whether the findings are clearly erroneous. *In re L.H.*, 2007 MT 70, ¶ 13, 336 Mont. 405, ¶ 13, 154 P.3d 622, ¶ 13. "A finding of fact is clearly erroneous if it

is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake." *In re L.H.*, ¶ 13. We review a district court's conclusions of law for correctness. *In re L.H.*, ¶ 13.

¶13 "The district court is bound to give primary consideration to the physical, mental and emotional conditions and needs of the children. Consequently, the best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights." *In re C.J.K.*, ¶ 14 (citing § 41-3-609(3), MCA). "Moreover, the party seeking to terminate parental rights must demonstrate by clear and convincing evidence that the statutory requirements for termination have been met." *In re C.J.K.*, ¶ 14.

## DISCUSSION

¶14 ***Issue One. Did the District Court abuse its discretion in terminating A.M.D.'s and A.A.D.'s parental rights to A.H.D?***

¶15 Sections 41-3-601–612, MCA, provide for the termination of the parent-child relationship. *In re K.J.B.*, 2007 MT 216, ¶ 25, 339 Mont. 28, ¶ 25, 168 P.3d 629, ¶ 25. Section 41-3-602, MCA, states:

> This part provides procedures and criteria by which the parent-child legal relationship may be terminated by a court if the relationship is not in the best interest of the child. The termination of the parent-child legal relationship provided for in this part is to be used in those situations when there is a determination that a child is abused or neglected, as defined in 41-3-102.

¶16 Accordingly, to proceed with a termination under §§ 41-3-601–612, MCA, there must be a determination that the child is "abused or neglected." Section 41-3-102(3),

7

MCA, defines "abused or neglected" as "the state or condition of a child who has suffered child abuse or neglect." Section 41-3-102(7)(a)(i)–(iii), MCA, then defines "child abuse or neglect" as: "(i) actual physical or psychological harm to a child; (ii) substantial risk of physical or psychological harm to a child; or (iii) abandonment." Section 41-3-102(7)(b)(i)(A), MCA, also notes that the term "child abuse or neglect" includes "actual physical or psychological harm to a child or substantial risk of physical or psychological harm to a child by the acts or omissions of a person responsible for the child's welfare . . . ." A "youth in need of care" is "a youth who has been adjudicated or determined, after a hearing, to be or to have been abused, neglected, or abandoned." Section 41-3-102(34), MCA.

¶17 After the District Court determines that the child is abused or neglected, the court is authorized to terminate the parent-child relationship if it finds that any of the criteria enumerated in § 41-3-609(1), MCA, exist. *In re K.J.B.*, ¶¶ 27, 29. Most relevant to this matter, § 41-3-609(1)(d), MCA, provides that:

> The court may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence . . . that any of the following circumstances exist:
> (d) the parent has subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e) . . . .

¶18 Although DPHHS is generally obligated to make reasonable efforts to prevent removal of a child from the child's home and to reunify separated families under § 41-3-423(1), MCA, there are several key exceptions. Section 41-3-423(2)(e), MCA, states:

> Except in a proceeding subject to the federal Indian Child Welfare Act, the department may, at any time during an abuse and neglect proceeding, make a request for a determination that preservation or reunification services

8

need not be provided. If an indigent parent is not already represented by counsel, the court shall immediately provide for the appointment or assignment of counsel to represent the indigent parent in accordance with the provisions of 41-3-425. A court may make a finding that the department need not make reasonable efforts to provide preservation or reunification services if the court finds that the parent has:

(e) had parental rights to the child's sibling or other child of the parent involuntarily terminated and the circumstances related to the termination of parental rights are relevant to the parent's ability to adequately care for the child at issue.

Section 41-3-423(2)(a)–(e), MCA, frees DPHHS from making further efforts to reunify the family once the statutory elements are met. *In re Custody and Parental Rights of A.P.*, 2007 MT 297, ¶ 17, 340 Mont. 39, ¶ 17, 172 P.3d 105, ¶ 17.

¶19    With this statutory scheme in mind, we can now turn to the parents' specific contention that the District Court erred when it terminated their parental rights to A.H.D. Father and Mother assert that the District Court erred in two ways: (1) the District Court failed to specify which circumstances of their previous involuntary termination were relevant to their ability to adequately care for A.H.D., and (2) the District Court did not find by clear and convincing evidence that these circumstances existed.  The parents' arguments can be addressed in turn.

**A.  Specific Circumstances of Prior Involuntary Termination**

¶20    Father and Mother contend that the District Court failed to specify which circumstances of the previous involuntary termination were relevant to their ability to care for A.H.D.  The parents claim that the termination order did not reference any specific circumstances of the previous termination.  They argue that without the specific circumstances, "a court cannot compare A.H.D.'s situation to the situation of her siblings,

9

let alone determine that clear and convincing evidence establishes that those circumstances are relevant to the current termination proceeding." Accordingly, the parents assert that the District Court abused its discretion when it failed to make such specific findings.

¶21 As outlined above, the court may order the termination of the parent-child relationship, upon a finding established by clear and convincing evidence, that any of the circumstances enumerated in § 41-3-609(1)(a)–(f), MCA, exist. Section 41-3-609(1), MCA; *In re K.J.B.*, ¶ 27. One of these circumstances is that the parent has subjected a child to any of the circumstances listed in § 41-3-423(2)(a)–(e), MCA. Section 41-3-609(1)(d), MCA; *In re K.J.B.*, ¶ 27. Most relevant to this appeal, § 41-3-423(2)(e), MCA, provides that DPHHS need not make reasonable efforts to provide preservation or reunification services if the court finds that the parent has "had parental rights to the child's sibling or other child of the parent involuntarily terminated and the circumstances related to the termination of parental rights are relevant to the parent's ability to adequately care for the child at issue." Section 41-3-423(2)(e), MCA; *In re K.J.B.*, ¶ 28. "We have determined that the circumstances of a prior termination continue to be relevant in a later termination of a sibling under §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, unless the circumstances have changed." *In re A.P.*, ¶ 30. "To satisfy the relevant statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings." *In re K.J.B.*, ¶ 23.

¶22 The State asserts that the District Court's termination order must be read in conjunction with the Lake County termination order and the March 12 order. Stating that

the findings and conclusions in the March 12 order were relevant and applicable, the District Court incorporated them into the termination order. In the March 12 order, the District Court specifically found that Father and Mother had their parental rights to S.D. and T.D. involuntarily terminated pursuant to § 41-3-609(1)(f), MCA, and the circumstances related to the termination of their parental rights were relevant to their ability to adequately care for A.H.D. In the termination order, the District Court reiterated that these findings were the ground for the court's determination that reunification services need not be provided.

¶23 We agree with the State that the District Court did not err in determining that the circumstances related to the termination of Father's and Mother's parental rights with respect to S.D. and T.D. were relevant to their ability to adequately care for A.H.D. The order terminating Father's and Mother's parental rights to A.H.D. must be considered in conjunction with the March 12 order, along with the testimony presented at the two hearings. In the termination order, the District Court specifically found that the parents' "inability to satisfy the elements of their Lake County Treatment Plan and their ultimate termination of parental rights, as well as the continuing concerns with the same parenting deficiencies, their inability to improve their parenting skills, and their failure to visit their child despite being given opportunities to do so, indicate their inability to exercise their fundamental parental rights as the child's parents."

¶24 The District Court found that it had been determined that Mother had little capacity for true intimacy or true self-reflection and exhibited "an essentially unresolved dismissive style of attachment consistent with her lack of attachments during childhood."

11

Although the treatment plan recommended intensive therapy for Mother, the District Court found that she failed to follow through with counseling and quit attending sessions in the spring of 2005. In addition, Father refused to attend therapy sessions with Mother as recommended and did not follow through with obtaining another psychological evaluation and parenting assessment as recommended.

¶25 The District Court also found that the parents failed to follow through with several of the parenting services provided for them in relation to S.D. and T.D. Specifically, the District Court found that they attended only 23.45 hours of an offered 109.5 hours of parenting education. The District Court further found that of the 65 arranged visits between the parents and S.D. and T.D., the parents arrived late for most visits, cancelled 26 visits, and failed to appear for three visits, despite DPHHS providing them with transportation. Furthermore, the parents cancelled scheduled appointments with service providers, including AWARE and the Child Development Center, and failed to maintain contact with their social workers. The District Court also found, citing the Lake County termination order, that in the approximately sixteen months that the Lake County DPHHS worked with Father and Mother, they were given every opportunity to comply with their treatment plan, but "they chose not to do so."

¶26 The District Court's findings of fact pertaining specifically to the parenting of A.H.D. support its conclusion that the above-described circumstances related to the termination of parental rights as to S.D. and T.D. remained relevant to the parents' ability to adequately care for A.H.D. The District Court first noted that at the time of the hearings, A.H.D. was eight to ten months old, and in the previous termination, T.D. was

12

ten months to two years old. The District Court found that the same risks that were present for T.D., given her infancy and reliance on caregivers for basic needs, applied to A.H.D.

¶27 The District Court addressed the testimony of visitation specialist Kelli Becker, who noted that Mother continued to require prompting as to meeting A.H.D.'s basic needs and that she was unable to consistently replicate or demonstrate these parenting skills during visits with A.H.D. The District Court specifically found that Mother had exhibited these same basic parenting limitations with her older children, thus demonstrating that the circumstances that led to the previous termination remained relevant to Mother's ability to care for A.H.D.

¶28 Furthermore, the District Court found that in the visits with A.H.D., the parents demonstrated considerable difficulty in accepting redirection or changing behaviors that were detrimental to their children. The District Court found that Mother continued to demonstrate a lack of understanding of basic parenting skills, while Father failed to demonstrate an ability to carry out regular parenting activities and typically directed Mother to complete the parenting tasks while he observed. The District Court found that he was unsupportive of Mother, which contradicted counselor recommendations.

¶29 The District Court also noted Mother's failure to follow through with mental health recommendations. The court found that she had "significant mental health issues" including depression and emotional issues that impacted her ability to parent. Based on the testimony of social workers Schlenz and Becker at the hearing, the court found that despite recommendations for therapy and referrals to parenting classes, Mother failed to

engage in those services. Given Mother's and Father's failure to comply with therapy or parenting class recommendations in the previous termination, the District Court's findings with regard to A.H.D. again demonstrate that the circumstances that led to the previous termination continued to be relevant.

¶30 On the issue of visitation, the District Court found that although DPHHS provided resources and continued to facilitate visitations, "the [parents] continued their pattern of failing to participate in offered services." The District Court specifically noted their failure to maintain contact with social worker Schlenz. When the parents did contact Schlenz, the District Court found that the contacts were often fraught with hostility and resistance from the parents. The District Court specifically noted that the parents chose to "take a break" from doing visits with A.H.D. following the termination of their parental rights to S.D. and T.D., which the court said demonstrated their lack of dedication to parenting. Father and Mother did not have a single visit with A.H.D. from July 5, 2006 to October 6, 2006, which the court found was predominantly due to the parents' failure to contact DPHHS. The court found that their pattern of missing visits with A.H.D. continued in 2007 as well. These findings clearly support the District Court's finding that the circumstances related to the termination of Father's and Mother's parental rights to S.D. and T.D. remained relevant to their ability to care for A.H.D., given their documented prior failings in keeping in contact with DPHHS.

¶31 The District Court further found that from

> August of 2004 to May of 2006, the [parents] exhibited patterns of behavior demonstrating an inability to provide basic parenting for their eldest children; these patterns are certainly germane to their ability to care for

14

A.H.D. in light of the pervasiveness of their indifference towards parenting S.D. and T.D. (i.e., not an isolated incidence or issue). These patterns continued from the time of A.H.D.'s birth to the present. The [parents] lack insight into fundamental parenting knowledge and have been oppositional to all services offered to assist them in improving their skills.

Later, the court specifically found that the parents "have failed to demonstrate consistency and predictability in meeting the needs of their child(ren) and the same concerns that were present in the Lake County case that lead [sic] to termination of their parental rights remain a concern as to their ability to parent A.H.D."

¶32 The findings of fact in both the March 12 order and the termination order clearly demonstrate and support the District Court's finding that the circumstances that led to the termination of Father's and Mother's parental rights to S.D. and T.D. were on-going in nature and remained relevant to their ability to care for A.H.D. Father and Mother failed to comply with the Lake County treatment plan. As a result, the Lake County District Court terminated the parent-child relationship between the parents and S.D. and T.D. The same circumstances that illustrated their failure to comply with the treatment plan were clearly present and unchanged in their parenting of A.H.D., as demonstrated by the District Court's findings. Contrary to the parents' assertion, the District Court specifically identified the circumstances of the earlier termination that remained relevant to the termination of their rights to A.H.D.

¶33 To the extent that Father and Mother challenge whether any "peculiar circumstances" existed at all to support the termination of their parental rights, we note that the District Court's findings of fact were supported by substantial evidence. In its findings of fact, the District Court even cited to the record and the testimony at the

15

hearings. The parents point out that S.D. and T.D. were removed from the family home due to unsafe living conditions and claim that these circumstances are easily remedied. The parents note that they moved to a new home in a different city prior to A.H.D.'s birth and they testified at trial that the home was safe and clean for a child. The parents claim that no one from the department even inspected the new home and that the District Court failed to mention this change in circumstances in its findings. The parents' contention is without merit, however, as we note that in the Lake County termination order, the Lake County District Court found that DPHHS was unable to inspect the parents' Whitefish home because of the parents' vague schedule and lack of cooperation in arranging visits. The Flathead County District Court also made specific findings illustrating the difficulties DPHHS had in maintaining contact with the parents. Ultimately, the District Court's findings and a review of the record demonstrate that there were numerous circumstances supporting the termination of Father's and Mother's parental rights.

¶34 We hold that the District Court did not err in finding that the circumstances related to the termination of Father's and Mother's parental rights to S.D. and T.D. were relevant to their ability to care for A.H.D.

### B. Clear and Convincing Evidence Finding

¶35 Father and Mother next argue that the District Court erred when it failed to find that the circumstances that led to the termination of their parental rights to S.D. and T.D. were established by clear and convincing evidence. The parents contend that "the District Court only found that clear and convincing evidence established that a previous judicial determination was made that reunification services need not be provided." They

assert that the District Court's failure to enter a new finding in its termination order was in error.

¶36 Section 41-3-609(1)(d), MCA, states that "[t]he court may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence . . . that any of the following circumstances exist: (d) the parent has subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e) . . . ." Because the termination of parental rights involves a fundamental liberty interest, a district court must adequately address each statutory requirement to determine if it has been established. *In re A.P.*, ¶ 27. We have held that "the party seeking to terminate parental rights must demonstrate by clear and convincing evidence that the statutory requirements for termination have been met." *In re C.J.K.*, ¶ 14.

¶37 In the termination order the District Court found:

> Based upon the foregoing, clear and convincing evidence exists that
> 1.   There has been a judicial determination that Reunification Services Need Not be Provided to birth-mother . . . and birth-father . . . based upon the following:
> a.   The birth-parents' parental rights to T.D. and S.D., [A.H.D.]'s siblings, were involuntarily terminated in the Twentieth Judicial District Court, Lake County, Montana;
> b.   The circumstances related to that termination of parental rights are relevant to the parents' ability to adequately care for [A.H.D.].

In the March 12 order, the District Court prefaced its recitation of the findings of fact by stating "the Court hereby determines the following [findings of fact], based upon clear and convincing evidence . . . ." The court then specifically found that "[t]he circumstances related to the termination of parental rights as to S.D. and T.D. are relevant to the birth-parents' ability to adequately care for the above-named child, A.H.D."

17

¶38 It is clear from a review of the District Court's two orders that the court addressed the applicable burden of proof and found that the State established, by clear and convincing evidence, that the circumstances related to the termination of Father's and Mother's parental rights to S.D. and T.D. were relevant to their ability to adequately care for A.H.D. As noted above, the termination order must be read in conjunction with the March 12 order, as the earlier findings were expressly incorporated into the termination order. In the March 12 order, the District Court based its findings on clear and convincing evidence. To the extent that the parents contend that the District Court failed to make a new "clear and convincing evidence finding" in the termination order and that "over six months passed between the hearing on the matter of whether reunification services needed to be provided and the district court's ultimate termination of parental rights" we note that, at the termination hearing, the court took judicial notice of the prior hearing testimony and proceedings, and the parents' counsel at the termination hearing stated that he and the parents agreed that it would "be duplicative . . . and unnecessary to essentially present the same testimony over again." The District Court's finding was not "stale" as it was agreed that the hearing testimony that led to the March 12 findings of fact was still relevant and applicable. Accordingly the District Court did not err in relying on the testimony presented at the earlier hearings and incorporating earlier findings based on evidence presented at those hearings, as the testimony was still relevant to the termination proceedings.

¶39 DPHHS presented clear and convincing evidence establishing that the circumstances related to the termination of Father's and Mother's parental rights to S.D.

18

and T.D. were relevant to their ability to adequately care for A.H.D. The District Court made specific findings as to the statutory requirements of §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, and we hold that the District Court did not abuse its discretion in terminating Father's and Mother's parental rights to A.H.D.

¶40    Affirmed.


                                        /S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE