DA 09-0084

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 271N

IN THE MATTER OF
K.M.W. and S.M.W.

     Youths in Need of Care.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DN 07-17
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Jim Wheelis, Chief Appellate Defender; Koan Mercer, Assistant Appellate
    Defender; Helena, Montana

    For Appellee:

    Hon. Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
    Assistant Attorney General; Helena, Montana

    Brett D. Linneweber, Park County Attorney, Livingston, Montana

Submitted on Briefs:  July 8, 2009

Decided:  August 14, 2009

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     L.D.W., the sole parent of twin girls K.M.W. and S.M.W., appeals from the orders of the Sixth Judicial District Court, Park County, terminating his parental rights.[1]  We affirm.

¶3     The Montana Department of Health and Human Services (the "Department") filed petitions for Immediate Protection and Emergency Protective Services, for Adjudication of Youth[s] in Need of Care and for Temporary Legal Custody of K.M.W. and S.M.W. The Department alleged that L.D.W. physically assaulted K.M.W. and S.M.W., which was described in an affidavit submitted by a Department social worker.  According to the affidavit, the Department received a report that K.M.W. had been hit on the face by her father.  K.M.W., who had visible and severe bruising near her left eye, told the social worker that her father hit her because she was getting homework problems wrong.  K.M.W. also told the social worker that her father has hit her on the face many times and

---

[1] The parties' names have been abbreviated for purposes of this appeal pursuant to Rule 10(6) of the Montana Rules of Appellate Procedure, which require the use of initials in proceedings regarding abused or neglected children.

that he has also hit her on her bottom, back, stomach, and thighs. K.M.W.'s sister, S.M.W., told the social worker that she saw her father hit K.M.W. in the face. S.M.W. also told the social worker that she rarely gets hit although K.M.W. "gets hit in the face a lot." The principal at the girls' school told the social worker that L.D.W. was "very volatile" and that he had to be present when L.D.W. met with the teachers at the school because L.D.W. frequently lost his temper.

¶4 During a show cause hearing L.D.W. stipulated that K.M.W. and S.M.W. were youths in need of care. The District Court subsequently adjudicated the girls as youths in need of care and granted the Department temporary legal custody. The District Court also approved a treatment plan which, among other things, required L.D.W. to:

(1) avoid criminal activity and report any criminal charges, criminal investigations or contact with law enforcement to his social worker;
(2) maintain weekly contact with his social worker;
(3) agree to comply with the counselor's and the doctor's recommendations regarding the girls [sic] counseling and medication needs;
(4) **complete a psychological evaluation by Dr. Tranel, and if the Department agrees with Dr. Tranel's recommendations, follow all recommendations of the evaluation and assessment;**
(5) continue to attend anger management class and any higher level of recommended therapy; and
(6) maintain employment and provide his social worker with verification of his employment, as well as changes in employment.

(Emphasis added.) L.D.W. knew that it was his responsibility to complete the terms of the treatment plan.

¶5 On December 19, 2007, the District Court issued an order extending temporary legal custody of K.M.W. and S.M.W. to the Department after L.D.W. failed to complete the terms of the treatment plan. The District Court also noted that L.D.W. wanted

3

additional time to work with the Department to complete the treatment plan and that he understood the consequences if he failed to do so.

¶6    After L.D.W. again failed to complete the terms of the treatment plan, the Department filed a petition to terminate L.D.W.'s parental rights and sought permanent custody of the girls. The Department alleged that L.D.W.'s treatment plan was unsuccessful and that he was unlikely to change in a reasonable amount of time. The District Court conducted a termination hearing on December 12 and December 17, 2008. On January 13, 2009, the District Court issued orders terminating L.D.W.'s parental rights and transferring permanent legal custody of K.M.W. and S.M.W. to the Department.[2]  L.D.W. filed this timely appeal, and the separate cause numbers for K.M.W. and S.M.W. were consolidated for review.

¶7    L.D.W. argues that the Department failed to meet its statutory obligation to make reasonable efforts to reunify his family as required by § 41-3-423(1), MCA. Specifically, L.D.W. claims that the Department did not comply with § 41-3-423(1), MCA, because it did not provide specific psychotherapy services for his diagnosed personality disorders. As L.D.W. points out, Dr. Ned Tranel diagnosed L.D.W. with symptoms of hyperlexic condition, paranoid personality disorder, and intermittent explosive disorder and recommended that L.D.W. participate in psychotherapy, anger management therapy, parent training classes, and self-help groups. While L.D.W. admits that he received anger

---

[2] The District Court issued separate orders terminating L.D.W.'s parental rights to K.M.W. and S.M.W. In the order captioned as the termination order for K.M.W., the District Court wrongly stated that L.D.W.'s rights were terminated with respect to S.M.W. The District Court corrected the error in its May 28, 2009 Amended Order Terminating [L.D.W.'s] Parental Rights to K.M.W.

4

management therapy (and that he failed to complete other portions of the treatment plan), he contends that the Department violated § 41-3-423(1), MCA, by not providing him with specific psychotherapy services as recommended by Dr. Tranel. We do not agree.

¶8 Section 41-3-423(1), MCA, requires the Department to "make reasonable efforts to prevent the necessity of removal of a child from the child's home and to reunify families that have been separated by the state." Reasonable efforts include developing individual case plans that specify state efforts to reunify families and providing services pursuant to a case plan. Section 41-3-423(1), MCA. While courts are required to review the services provided by the Department when determining whether reasonable efforts to reunify the family have been made, a child's health and safety are of paramount concern. Section 41-3-423(1), (7), MCA.

¶9 It is clear from the record that the Department made reasonable efforts to reunify L.D.W.'s family. The record demonstrates that the Department worked with L.D.W. to develop a comprehensive treatment plan and that L.D.W. was provided with significant services to complete the plan successfully. The record also demonstrates that L.D.W. was uncooperative and that he refused to comply with the terms of the treatment plan. As the District Court found in its order terminating L.D.W.'s parental rights, a licensed clinical social worker attempted to provide anger management services, including individualized attention to L.D.W. but his "overall hostility and inability led to the loss of the limited initial clinical gains." The same social worker testified at the termination hearing that he modified his anger management sessions to accommodate Dr. Tranel's recommendations. L.D.W. was also provided with counseling services from a social

5

worker at the Yellowstone Boys and Girls Ranch who attempted to teach L.D.W. parenting skills. L.D.W., however, was unsuccessful in incorporating the parenting skills he was offered. In light of this evidence and in light of the District Court's specific findings with respect to L.D.W.'s failure to complete the treatment plan, we conclude that the Department made reasonable efforts to reunify L.D.W.'s family pursuant to § 41-3-423(1), MCA.

¶10 We review for an abuse of discretion a district court's decision to terminate a person's parental rights. *In re A.H.D.*, 2008 MT 57, ¶ 11, 341 Mont. 494, 178 P.3d 131. We review a district court's specific factual findings to determine whether the findings are clearly erroneous." *A.H.D.*, ¶ 12. We review for correctness a district court's conclusions of law. *A.H.D.*, ¶ 12.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs that substantial evidence supports the District Court's findings of fact and that the District Court's legal conclusions were correct.

¶12 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS