FILED

October 22 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0268

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 315N

IN THE MATTER OF:

J.D.,

A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDN 11-219
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Lucy Hansen, Attorney at Law; Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General; Helena, Montana

John Parker, Cascade County Attorney, Matthew S. Robertson, Deputy
County Attorney; Great Falls, Montana

Submitted on Briefs:   October 2, 2013
Decided:   October 22, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Father appeals the order of the Eighth Judicial District Court, Cascade County, that terminated his parental rights.  We affirm.

¶3     The Department of Public Health and Human Services (Department) filed a petition for emergency protective services, adjudication of J.D. as a youth in need of care, and for temporary legal custody of J.D.  Mother had given birth to J.D. in October 2011.  J.D. had been premature at 33 weeks of gestation.  J.D. tested positive for methamphetamines at birth.  J.D. spent several weeks in the neonatal intensive care unit.

¶4     The Department informed the court that J.D. had been released from the hospital and placed with a relative in Browning, Montana.  The Department presented testimony from a neonatologist and an expert from the Blackfeet Indian Tribe at a hearing on November 28, 2011. The District Court initially declared J.D. a youth in need of care, but later vacated that order due to the Department's failure to serve Mother and Father.

¶5     The District Court set the matter for a second contested case hearing.  The Department filed a supplemental affidavit in which its child protection specialist informed the court that the Department had attempted to have Mother move to Browning with J.D.'s kinship

provider to assist in bonding. Mother instead had left Browning and returned to Great Falls after a few weeks. Father had been arrested in late February 2012 and charged with robbery.

¶6 Both parties stipulated to adjudicate J.D. as a youth in need of care at the hearing on March 26, 2012. The court granted the Department temporary legal custody. The Blackfeet Tribe intervened pursuant to the Indian Child Welfare Act and monitored the proceedings.

¶7 The parties further stipulated to a treatment plan. Father's treatment plan addressed four major issues: 1) chemical dependency; 2) mental health issues; 3) a lack of consistent contact with J.D.; and 4) Father's lack of suitable housing and inconsistent employment. The Department eventually filed a petition for permanent legal custody and termination of parental rights in December 2012.

¶8 The court conducted a hearing on the Department's petition on March 18, 2013. The child protection specialist testified regarding Father's lack of contact with J.D. due to his failure to attend supervised visitations. The Department had offered to pay for travel and lodging costs for Mother and Father from Great Falls to Browning to facilitate supervised visitations with J.D. Mother and Father failed to take advantage of these accommodations.

¶9 The Department also presented evidence that Father failed to comply with random urine analysis testing. Father started, but failed to complete, chemical dependency treatment. Father also failed to attend two appointments to obtain a parenting assessment and one appointment for a psychological assessment.

¶10 An ICWA expert agreed that J.D. would be "in imminent risk of danger" if J.D. returned to her parents and that J.D. would likely suffer "serious emotional or physical

damage." The ICWA expert testified regarding her concern that Father had not completed any of his treatment. She further testified that the termination would be in J.D.'s best interest.

¶11 Father countered that he had gone to intensive outpatient treatment four times a week for a month, but that his attendance had dropped when he had grown "sick of the Department." Father admitted that he failed to finish his treatment plan. The District Court granted the Department's petition to terminate. Father appeals.

¶12 We review for an abuse of discretion a district court's decision to terminate a person's parental rights. *In re A.H.D.*, 2008 MT 57, ¶ 11, 341 Mont. 494, 170 P.3d 131. Father argues on appeal that the treatment plan to which he stipulated was not appropriate and that the Department had failed to make active efforts to reunify Father with J.D. as required under ICWA. We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions.

¶13 The Department satisfied the requirement under ICWA that it made active efforts to reunify J.D. with her parents. The Department also presented sufficient evidence that reunification of J.D. with her parents likely would cause "serious emotional or physical damage" to J.D. It is manifest on the face of the briefs and the record before us that substantial evidence supports the District Court's findings of fact and the District Court correctly applied the law to these facts.

¶14 Affirmed.

/S/ BRIAN MORRIS

We concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE