FILED

02/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0217

DA 20-0217

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 21N

IN THE MATTER OF:

T.N.B., A.M.B, and S.M.B,

     Youths in Need of Care.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                     In and For the County of Yellowstone, Cause No. DN 18-90
                     Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Gregory D. Birdsong, Birdsong Law Office, Santa Fe, New Mexico

        For Appellee:

                Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

                Scott D. Twito, Yellowstone County Attorney, Amanda Tiernan, Deputy County Attorney, Billings, Montana

                       Submitted on Briefs: January 13, 2021

                              Decided: February 2, 2021

Filed:

                          _____
                               Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant N.B. (Father) seeks reversal of the Thirteenth Judicial District Court's February 24, 2020 order terminating his parental rights to three children, S.M.B., A.M.B., and T.N.B. When removed from the home, the children were approximately two-and-a-half years, one-and-a-half years, and eight months old, respectively. A.M.B., the middle child, is the only boy. The parents had some previous history with the Department, but the event that triggered the children's March 8, 2018 removal was a life-threatening head injury to A.M.B. that resulted in his air transport to Salt Lake City and led to Mother being charged with aggravated assault.[1] Though Father was not home when the incident occurred, examination showed that A.M.B. also had a broken arm, which likely occurred about a week earlier. The Child Protection Specialist who responded to the home reported that the two girls showed obvious signs of neglect: they were dirty, their hair was matted, they smelled of urine and were wearing dirty clothes, which also smelled of urine, and two-year-old S.M.B. had no verbal skills and appeared not to understand when spoken to.

---

[1] We affirmed the termination of Mother's parental rights to the three children last year. *In re T.N.B.*, 2020 MT 143N, DA 19-0570, 2020 Mont. LEXIS 1607.

2

¶3     Father agreed to the Department's initial intervention at the show-cause hearing. He was given a treatment plan in May 2018 and began to work toward its satisfactory completion. Father had fifty weeks of supervised parenting time with the children, missing only seven appointments. He cooperated with the Department and complied with the tasks in his treatment plan.

¶4     On December 7, 2018, the District Court held a hearing on the Department's petition for a determination that it need not provide reunification services to Mother. Father testified at that hearing. He explained that because of the long hours he worked, along with attending prayer and meditation group two or three days a week, childcare was Mother's responsibility, and the kids often were in bed when he got home. He had not ever seen her physically abuse the child, though he thought she neglected A.M.B. compared to his sisters. Father acknowledged having concern about A.M.B.'s general condition a few days before the March 8 incident but said he talked to Mother about getting him a checkup, which she promised to do the following week. He said he did not see obvious sign of injury to the boy prior to the life-threatening assault; he acknowledged a time about a week earlier, however, that A.M.B. had yelped and pulled his arm back when Father reached out to him. But he said that Mother would get argumentative and threatening if he ever tried to talk to her about the children.

¶5     Based primarily on his testimony, the Department filed a petition for a determination that it did not need to provide further preservation and reunification services to Father. The court held a hearing on September 9, 2019, at which the Department presented considerable evidence. Father did not testify at that hearing, but he called his mother and a witness who

3

had been supervising parenting time between Father and his children. After hearing from both counsel and from the guardian ad litem, the District Court granted the Department's petition. It discussed the evidence regarding the children's condition and their extensive needs, noting that providing the care they required would be "overwhelming to anyone" and expressing concern about Father's ability to meet those needs.

¶6 The court acknowledged that Father had been in a very difficult situation with the children's mother but, given the Department's previous involvement with the family, "the bottom line is [he] knew where to reach out for services" and did nothing. The court found that considering A.M.B.'s prior arm injury—which a medical witness had explained would have caused obvious pain—the lack of medical or dental care for any of the children, and the condition of the two girls—including, "still to this day," behavior of hoarding food—the evidence was clear and convincing that the children had been subjected to chronic and severe abuse or neglect. It explained to Father, "not to diminish the work you've done on yourself, I know you talked about your sobriety, not to diminish the fact that you are a hard working guy, you were working 70 hours a week, but there was no way to not see what was going on in this home with these three children." It concluded that there would be no further reunification services.

¶7 Following additional testimony at the February 7, 2020 termination hearing, the court terminated Father's parental rights to all three children. It followed with a written order. The District Court found that Father had subjected all three of his children to chronic, severe neglect, that Father believed A.M.B. needed medical attention the Sunday prior to his catastrophic injuries but had not followed through, that the injuries A.M.B.

4

suffered on March 8, 2018, "were just the climax of a long pattern of abuse and neglect," and that continuation of the parent-child relationship would likely result in continued abuse or neglect. The court determined that Father's conduct or condition was unlikely to change within a reasonable time and that the best interests of the children would be served by termination of the relationship.

¶8 The right to parent is a fundamental liberty interest; as such, an order terminating the right must be supported by clear and convincing evidence. *In re M.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047. "The best interests of the children are of paramount concern, however, and take precedence over parental rights." *In re M.N.*, ¶ 14 (citing *In re A.H.D.*, 2008 MT 57, ¶ 13, 341 Mont. 494, 178 P.3d 131). We will not disturb a district court's decision on appeal "unless there is a mistake of law or a finding of fact clearly erroneous that amounts to an abuse of discretion." *In re J.B.*, 2016 MT 68, ¶ 11, 383 Mont. 48, 368 P.3d 715 (citing *In re M.N.*, ¶ 14).

¶9 Father argues that the District Court abused its discretion by allowing the Department to forego reunification services and clearly erred by terminating his rights on the basis that he subjected the children to chronic, severe neglect. He contends that he "did everything a working parent with a domestic partner could reasonably have been asked to do. He worked 60 to 70 hours a week to put a roof over his children's heads and food on the table, relying on [Mother] to care for their children." When he became concerned about A.M.B.'s weight and coloring just a few days before the tragic assault, he got reassurances from Mother that she would make a doctor's appointment the next week. Father argues that he cooperated with the Department, fulfilled every requirement of his treatment plan,

5

and expressed willingness to do whatever was necessary to address any further concerns the Department might have. The Department responds that, even taking Father at his word, the evidence demonstrated that he either knew he should take action and he did not, or he saw no reason to take action. The Department asserts, "Father's belief that he has no culpability for the children's severe, chronic neglect is precisely why he cannot parent them."

¶10 Section 41-3-423(2), MCA, provides in pertinent part that "the department may, *at any time during an abuse and neglect proceeding*, make a request for a determination that preservation or reunification services need not be provided." (Emphasis added.) Reunification services are not necessary if the court finds by clear and convincing evidence that the parent has "subjected a child to aggravated circumstances, including but not limited to . . . chronic, severe neglect of a child[.]" Section 41-3-423(2)(a), (4), MCA. Though the statute does not define it, we have construed chronic neglect to mean "marked by long duration, by frequent recurrence over a long time, and often by slowly progressing seriousness." *In re M.N.*, ¶ 27 (internal quotation and citation omitted).

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Upon review of the record and the District Court's analysis, we are not persuaded by Father's argument that the court abused its discretion by terminating his rights despite his work in good faith to complete a treatment plan or by permitting the Department to discontinue its efforts to provide services toward reunification after it had agreed to a treatment plan. The statute permitted the Department's petition, and the evidence showed plainly that these three

children were severely and chronically neglected. As their father, he had equal responsibility to care for them and to keep them safe from harm. He failed to protect them from the malnourishment, developmental delays, and poor condition that have led to their serious and in some instances lifelong needs. Applying settled standards of review, we conclude that the District Court did not abuse its discretion when it concluded that reunification would be contrary to the children's best interests and that Father would not be able to parent them adequately within a reasonable period of time. Its order terminating Father's parental rights is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE