FILED

October 22 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

OP 08-0411

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 358

FILED

OCT 2 2 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

J.C.,

Petitioner,

v.

ELEVENTH JUDICIAL DISTRICT COURT,
FLATHEAD COUNTY, THE HONORABLE
TED O. LYMPUS,

Respondent.

OPINION

and

ORDER

¶1     J.C., the mother of eight-year-old J.R., filed with this Court a Petition for Writ of Supervisory Control pursuant to M. R. App. P. 14, on September 2, 2008. In her petition, J.C. alleges that she has been deprived of her right to parent J.R. because of the Amended Petition for Termination of Parental Rights and for Adoption filed by G.R. and P.R., J.R.'s aunt and uncle. J.C. further alleges that Respondent has issued unlawful and unconstitutional *ex parte* and other orders adversely affecting her parental rights.

¶2     On September 3, 2008, we ordered Respondent to prepare, file and serve a summary response to J.C.'s petition. We also granted G.R. and P.R. time to file a summary response should they choose to do so. In addition, we ordered that all proceedings in the underlying District Court cause be stayed pending further order of this Court.

¶3     Pursuant to our Order, Respondent filed a Summary Response to Petition for Writ of Supervisory Control on September 15, 2008. To date, G.R. and P.R. have not responded.

**Factual and Procedural Background**

1

¶4 J.C. is the sole surviving parent of eight-year-old J.R. J.R.'s birth father was killed in 1999 when J.C. crashed the vehicle in which she, J.R.'s father, and another of J.C.'s children were riding. J.C. was pregnant with J.R. at the time. The wreck killed all but J.C. and her unborn child, J.R. J.C. is now married to M.W. M.W. and J.C. have lived together since J.R. was one month old.

¶5 In 2005, J.C. drove the getaway car in a botched armed robbery. J.R. and his half-brother were unrestrained in the back seat of the vehicle when J.C. crashed the car into a tree. J.C. was taken to jail and the children were placed in foster care by the Department of Public Health and Human Services. J.C. pled guilty to felony criminal endangerment for her roll in the armed robbery. She received a ten-year suspended sentence in Flathead County Cause No. DC 05-090A. The sentencing court warned J.C. that if she violated her probation, she would serve the entire ten years. J.C. ultimately agreed to allow J.R.'s half-brother to move with his father to South Dakota, but J.C. declined to relinquish J.R. to his aunt and uncle despite their offers to assist her.

¶6 Less than a year after J.C. received her suspended sentence, she admitted to violating her probation by drinking and driving. Her suspended sentence was revoked and she was transported to the women's prison in Billings to serve her full sentence. Before she went to prison, J.C. executed a Durable Power of Attorney enabling M.W. to handle her financial affairs. Although J.C. made no provision for J.R. in the power of attorney, she left J.R. in M.W.'s care. M.W. is himself on probation for failing to register in Montana as a violent offender.

¶7 On November 21, 2007, G.R. and P.R. filed a Petition for Termination of Parental Rights requesting that the court permanently terminate J.C.'s parental rights to J.R. and order the adoption of J.R. by G.R. and P.R. G.R. and P.R. also filed a Motion for Temporary Care pending the disposition of their petition. That same day, Judge Lympus issued an order removing J.R. from M.W.'s care and placing him in the temporary care of G.R. and P.R., who reside in Middleton, Idaho.

¶8 On December 11, 2007, J.C. filed a motion to dismiss the petition to terminate her parental rights alleging that G.R. and P.R. do not qualify as persons entitled by the

adoption statutes to file such a petition as they do not meet any of the standing requirements. However, the following day, J.C. signed an agreement wherein she "voluntarily and unequivocally" relinquished her parental rights to J.C. and consented "to both the permanent transfer of legal and physical custody to, and the adoption of" J.R. by G.R. and P.R. J.C. was represented by counsel at the time she entered into this agreement.

¶9 Eight days later, on December 20, 2007, J.C. revoked her consent and moved to dismiss the Order for Temporary Care. She also requested that the court impose sanctions against G.R., P.R. and their counsel on the grounds that the Motion for Temporary Care "was not warranted by existing law and was filed for the improper purpose of depriving a parent of her constitutionally protected right to parent her child." That same day, M.W. filed a Cross-Petition for Step-Parent Adoption.

¶10 A hearing on the issue of temporary care took place on March 25, 2008. J.C. testified from prison via videoconference. G.R., P.R., and M.W. testified as well. At the time of the hearing, G.R. and P.R. filed a motion to amend their Petition for Termination of Parental Rights to add a reference to § 40-6-233, MCA (2007), giving relatives within the third degree the right to bring an action alleging abuse of parental authority. The court allowed the filing of the amended petition. On May 5, 2008, J.C. filed a motion to dismiss the amended petition arguing that a parental abuse action is a distinct and separate action which does not confer standing under the adoption statutes.

¶11 The District Court issued its Findings of Fact, Conclusions of Law and Order on June 11, 2008, wherein the court determined that G.R. and P.R. had standing to bring the petition. The court ordered that J.R. remain in the temporary care of G.R. and P.R. pending a hearing on the termination of J.C.'s parental rights. The court also denied J.C.'s motion for sanctions. Thereafter, J.C. filed her Petition for Writ of Supervisory Control with this Court. A hearing on the termination of J.C.'s parental rights was to be conducted by the District Court on September 10, 2008, but that action has been stayed pending the outcome of J.C.'s petition.

**Discussion**

3

¶12 Article VII, Section 2(2) of the Montana Constitution gives this Court general supervisory control over all other courts. This supervisory control is, however, an "extraordinary remedy" that is to be exercised only in "extraordinary circumstances." *Miller v. Eighteenth Judicial Dist. Court*, 2007 MT 149, ¶ 16, 337 Mont. 488, ¶ 16, 162 P.3d 121, ¶ 16 (citing *Evans v. Montana Eleventh Jud. Dist. Court*, 2000 MT 38, ¶ 15, 298 Mont. 279, ¶ 15, 995 P.2d 455, ¶ 15; *Park v. Sixth Judicial Dist. Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13). Consequently, we exercise supervisory control only when a district court is proceeding under a mistake of law and, in so doing, is causing a gross injustice, and where the normal appeal process is not an adequate remedy. *Miller*, ¶ 16. Moreover, we make our determination regarding the exercise of supervisory control on a case-by-case basis. *Miller*, ¶ 16 (citing *Inter-Fluve v. Eighteenth Jud. Dist. Court*, 2005 MT 103, ¶ 17, 327 Mont. 14, ¶ 17, 112 P.3d 258, ¶ 17; *Dusek v. Eighth Judicial Dist. Court*, 2003 MT 303, ¶ 6, 318 Mont. 166, ¶6, 79 P.3d 292, ¶ 6).

¶13 We hold that the case *sub judice* meets the requirements for the exercise of supervisory control on the following bases. First, had the lower court proceedings in this matter not been stayed pending our determination of J.C.'s petition, J.C.'s fundamental right to parent her child may well have been terminated. Second, the issue of whether G.R. and P.R. have standing to bring their petition is a purely legal one. Third, the District Court is proceeding under a mistake of law regarding G.R. and P.R.'s standing in this matter resulting in a gross injustice to J.C. and J.R. Finally, this case presents constitutional issues of statewide importance—i.e., a parent's fundamental constitutional right to parent her child.

¶14 Accordingly, we assume supervisory control over this matter to consider the issue raised by J.C.'s petition: Whether G.R. and P.R. have standing to bring their Amended Petition to Terminate Parental Rights and for Adoption.

*Standing*

4

¶15 Standing refers to the threshold justiciability requirement that a plaintiff have a personal stake in a particular case. *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶ 14, 340 Mont. 56, ¶ 14, 172 P.3d 1232, ¶ 14 (citing *Bowen v. McDonald*, 276 Mont. 193, 201-02, 915 P.2d 201, 206 (1996)). If a plaintiff lacks standing, a court cannot grant relief because a justiciable controversy does not exist. *Ballas*, ¶ 14 (citing *Powder River County v. State*, 2002 MT 259, ¶ 101, 312 Mont. 198, ¶ 101, 60 P.3d 357, ¶ 101).

¶16 In her Petition for Writ of Supervisory Control, J.C. argues that G.R. and P.R. lack standing because they are not persons entitled to bring a petition for adoption pursuant to § 42-1-107, MCA. Instead, this statute provides that a child may be placed for adoption only by:

> (a) the department or another agency to which the child has been relinquished for purposes of adoption;
> (b) the department or another agency expressly authorized to place the child for adoption by a court order terminating the relationship between the child and the child's parent or guardian;
> (c) the child's parents; or
> (d) a guardian expressly authorized by the court to place the child for adoption.

Section 42-1-107(2), MCA. Clearly, a child's aunt and uncle are not parties authorized by the statute to place the child for adoption.

¶17 Additionally, § 42-1-107(1), MCA, provides that "[a]n adoption decree may not be entered if the child who is the subject of an adoption proceeding is not legally free for adoption." And, "[a] child is not legally free for adoption until the parental rights of the birth parent or parents have been terminated by a court: (1) as provided in [Title 42]; [or] (2) pursuant to Title 41, chapter 3 . . . ." Section 42-2-602, MCA.

¶18 However, Title 42, chapter 2, MCA, specifies that adoption proceedings should be based on the *consent* of the birth parent and that controversies regarding termination of parental rights should be a separate and distinct action. To that end, the Official Comments to Title 42, chapter 2, MCA, provide:

5

It is the theory of this act that the adoption proceedings should be *based on consent.* Only then can the adoption court devote its entire attention to the inquiry whether the adoptive home will serve the best interests of the child and whether the child is properly placed in the adoptive home.

Under this theory *controversies respecting the termination of parental rights should be settled in other proceedings in a court with jurisdiction of the parties before the adoption proceedings are brought.* Once the parental rights are terminated the adoption court in the adoption proceedings has no other function in this respect except to recognize that the parental rights have been legally terminated by consent or by the order of a court of competent jurisdiction, followed by consent of a person, agency or court having authority to consent.

It has been suggested that a procedure should be provided in the adoption act to terminate parental rights where the consent cannot be obtained. Aside from the jurisdictional and procedural difficulties this would entail, it is subject to a basic policy objection. The issues to be tried in a controversy over the termination of parental rights, i.e., the degree of unfitness of a parent, are quite different than the inquiry properly before an adoption court. *The two should not be mixed.* The trial of controversial issues over parental rights should not cast an influence in the adoption proceedings where the sole inquiry should be the future best interests of the child.

Consequently, the determination of parental rights is left to be settled under the laws of the various states, and until terminated, by consent or by a court order in a court having jurisdiction of the parties under laws providing therefore, *there can be no adoption proceedings.* [Emphasis added.]

¶19 In this case, the District Court determined that G.R. and P.R. had standing to file their Petition for Termination of Parental Rights as they are prospective adoptive parents pursuant to Title 42, part 6,[1] and § 40-6-233, MCA. However, a petition for termination of parental rights under Title 42, chapter 2, part 6, may only be brought by "[t]he department, a licensed child-placing agency, *the prospective adoptive parent to whom the relinquishment is issued*, or a guardian with custody of the child." Section 42-2-603(2), MCA (emphasis added). In this case, G.R. and P.R. are not the department, a licensed child-placing agency or guardians with custody of the child. And, although J.C.

---

[1] Since chapter 2 is the only chapter in Title 42 that contains a part 6, we conclude that the District Court was referring to Title 42, chapter 2, part 6, MCA.

originally agreed to relinquish her parental rights to G.R. and P.R., J.C. subsequently revoked that agreement contending that she was not adequately counseled as required by § 42-2-409, MCA. Hence, contrary to the District Court's assertions, Title 42, chapter 2, part 6, MCA, does not give G.R. and P.R. standing to file a termination for parental rights since they are not "prospective adoptive parent[s] to whom [a] relinquishment [has been] issued." Section 42-2-603(2), MCA.

¶20 Relying on *Girard v. Williams*, 1998 MT 231, 291 Mont. 49, 966 P.2d 1155, G.R. and P.R. argue that a finding of unfitness under Montana's Adoption Act (Title 42) presents a statutory exception to the requirement that the natural parents consent to the adoption of their child. However, this Court noted in *Girard* that a court may properly make a determination that a child is abused, neglected or dependent only in a proceeding instituted pursuant to, and in conformity with, the provisions of Title 41, chapter 3, MCA. *Girard*, ¶ 46 (citing *In re Guardianship of D.T.N.*, 275 Mont. 480, 485, 914 P.2d 579, 582 (1996); *Matter of Guardianship of Aschenbrenner*, 182 Mont. 540, 551, 597 P.2d 1156, 1163 (1979); *Henderson v. Henderson*, 174 Mont. 1, 9, 568 P.2d 177, 181 (1977)). We stressed in *Girard* that "[s]uch determinations—or other interjections of abuse and neglect considerations—are inappropriate and, indeed, erroneous as a matter of law if made in other types of statutory proceedings relating to the custody of children." *Girard*, ¶ 46.

¶21 Moreover, under Title 41, chapter 3, MCA, a petition for termination of parental rights based on abuse or neglect of a child may only be brought by the county attorney, the attorney general, or an attorney hired by the county. Section 41-3-422(2), MCA. Consequently, under the clear wording of this statue, G.R. and P.R. do not have standing to bring a petition for termination of parental rights based on abuse or neglect of J.R.

¶22 In addition, the District Court has wrongly interpreted § 40-6-233, MCA, as granting standing to G.R. and P.R. Section 40-6-233, MCA, provides:

> The *abuse of parental authority* is the subject of judicial cognizance in a civil action brought by the child or by its relative within the third degree or by the county commissioners of the county where the child resides. When the abuse is established, *the child may be freed from the*

*dominion of the parent and the duty of support and education enforced.* A parent or guardian of a child has the right to give the child medicine prescribed for the child, and exercise of the right is not an abuse of parental authority. [Emphasis added.]

The District Court interpreted this statute to mean that a "relative within the third degree," such as G.R. and P.R., could bring an action terminating parental rights when physical abuse or neglect of a child has been established. On the contrary, § 40-6-233, MCA, refers to the abuse of "parental authority" and that the "duty of support and education" may be enforced once the child is freed from the dominion of the parent. Thus, this statute refers to parental authority for making decisions regarding the support and education of a child. This interpretation is supported by the placement of this statute in the Family Law section of the MCA under the part regarding the Obligations of Parents (Title 40, chapter 6, part 2). This interpretation is further buttressed by the statute immediately following § 40-6-233, MCA, which provides:

> The authority of the parent ceases:
> (1) upon the appointment, by a court, of a guardian of the person of a child;
> (2) upon the marriage of a child; or
> (3) upon its attaining majority.

Section 40-6-234, MCA. Certainly, if § 40-6-233, MCA, referred to the physical abuse or neglect of a child, the Legislature would not have contemplated that that abuse could continue until the child marries or attains majority. And, as noted previously, Title 41, chapter 3, MCA, is the proper section of the MCA under which a petition for termination of parental rights should be brought and that code section does not contemplate that relatives of a child may file the petition. Such a petition may only be brought by the county attorney, the attorney general, or an attorney hired by the county.

¶23 Based on the foregoing, we hold that the District Court erred in determining that G.R. and P.R. had standing to bring their petition for termination of J.C.'s parental rights to J.R. and in giving temporary care of J.R. to G.R. and P.R. However, since J.C. is currently serving a ten-year sentence in the Montana Women's Prison and will be unable

8

to care for J.R. for an extended period of time, and since M.W. has had no contact with J.C. or J.R. in several months and his whereabouts are unknown, the court should appoint G.R. and P.R. guardians of J.R. pursuant to § 72-5-222(1), MCA, and the County Attorney and the Department of Public Health and Human Services should initiate appropriate procedures under Title 41, chapter 3, MCA.

*Sanctions*

¶24 The District Court also denied J.C.'s request for sanctions under M. R. Civ. P. 11. which provides, in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

¶25 Based on the facts of this case, we cannot conclude that G.R. and P.R. brought their action for an improper purpose. It appears from the record before us that their only motivation was to provide J.R. with a safe, loving and stable environment in which to live given J.C.'s inability to parent J.R. due to J.C.'s lengthy incarceration. Moreover, we have stated that "to avoid sanctions under [M. R. Civ. P. 11], it is not necessary that a party be correct in his or her interpretation of the law, but only that the party make a good faith argument within his or her view of the law." *In re Custody of R.R.K.*, 260 Mont. 191, 203, 859 P.2d 998, 1006 (1993) (citing *In re Adoption of R.D.T.*, 239 Mont. 33, 36, 778 P.2d 416, 418 (1989). We conclude here that G.R. and P.R. did present a good faith argument, albeit, ultimately, an incorrect one. Therefore,

¶26 IT IS ORDERED that J.C.'s Petition for Writ of Supervisory Control is GRANTED.

¶27 IT IS FURTHER ORDERED that J.C.'s request for sanctions is DENIED.

9

¶28 IT IS FURTHER ORDERED that the District Court's order granting temporary care of J.R. to G.R. and P.R. is vacated. This case is remanded to the District Court for further proceedings consistent with this Order.

¶29 IT IS FURTHER ORDERED that the Clerk of this Court serve a copy of this Order upon all counsel of record, Flathead County Attorney Ed Corrigan, DPPHS Chief Legal Counsel Russ Cater, and the Hon. Ted O. Lympus, District Judge, Presiding, under Cause No. DA-07-80 (A).

DATED this _22nd_ day of October, 2008.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices