FILED

December 15 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0255

DA 15-0255

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 342

IN THE MATTER OF:

J.B.,

        A Youth in Need of Care.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DN 15-121
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Elizabeth Thomas, Attorney at Law, Hebron, Ohio

        For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Anne Sheehy Yegen, Department of Justice Child Protection Unit,
Forsyth, Montana

Submitted on Briefs:  November 12, 2015
Decided:  December 15, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    N.L. appeals the order of the Seventh Judicial District Court, Richland County, dismissing him as a party in the child abuse and neglect proceeding concerning his long-time girlfriend's son, J.B., and denying his request to appear at subsequent proceedings as a "person interested in [the] cause." We affirm in part and reverse in part.

¶2    N.L. presents the following issues for review:

1.  *Did the District Court err when it dismissed N.L. as a party?*

2.  *Did the District Court err when it denied N.L.'s request to appear at J.B.'s proceedings pursuant to § 41-3-422(9)(a), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    N.L. and M.H. were in a romantic, cohabitating relationship for approximately seven years. N.L. and M.H. never married. They have two biological children together, now ages six and eight. M.H. is the biological mother of J.B., now age ten. J.B. has no relationship with his biological father, who has not appeared in this case. N.L. acted as a father to J.B. and raised him from eight months old until June 12, 2012, when then seven year old J.B. and his two half-siblings were removed from their home by the Department of Public Health and Human Services (DPHHS).

¶4    Prior to DPHHS's involvement with the family, N.L. and M.H.'s relationship ended. M.H. left the family home and all three children with N.L. On June 10, 2012, N.L. contacted DPHHS and expressed concern that M.H. was going to try and take physical custody of J.B. and that J.B. was frightened to go with his mother. Two days later, DPHHS removed the three children from N.L. due to a report that N.L. was

2

apparently suicidal. After adjudicating the children as Youths in Need of Care, the District Court granted Temporary Legal Custody to DPHHS, which was extended several times. The District Court heard and handled the cases involving the three children together. While in protective custody, J.B. was placed in multiple foster homes and, for a short period, back with N.L. J.B. was removed from N.L.'s care for the second time when DPHHS learned there was no familial relationship between J.B. and N.L. and, additionally, that N.L. had a criminal history which prevented the placement based upon DPHHS policy. J.B.'s half-siblings were returned to N.L.'s care in October, 2014. J.B. is currently residing in a therapeutic group home.

¶5 On September 24, 2012, Doctor Brenda K. Roche, a neuropsychologist, conducted a Parent-Child Relationship Assessment of N.L. and J.B.'s relationship. In her report, Dr. Roche noted that, although not biologically related, J.B. identifies N.L. as his "dad" and that it would be detrimental to J.B. for their relationship to be severed.

¶6 After N.L.'s biological children, J.B.'s half-siblings, were returned to his care, M.H. moved the District Court to dismiss N.L. as a party to J.B.'s case. N.L. opposed dismissal. M.H. argued that N.L was not a stepparent to J.B. because she and N.L. were never married. M.H. also argued N.L. was never a party to the proceedings as they related to J.B., but was only a party to the proceedings regarding his two biological children. N.L. contended he was like a father to J.B., had participated thus far without objection, and that termination of N.L. and M.H.'s relationship did not affect the historically paternal relationship between N.L. and J.B. N.L. also argued that, even if the District Court dismissed him as a party, he should remain, at a minimum, a "person

3

interested" under § 41-3-422(9)(a), MCA. Under that provision, N.L. argued he had a continued right to notice and a right to appear at proceedings relating to J.B.

¶7 On March 20, 2015, the District Court agreed with M.H. and ordered N.L. dismissed as a party. After considering various definitions provided elsewhere in Montana Code Annotated (the Code), the District Court concluded N.L. did not satisfy the definition of an "interested person" and therefore N.L. was not entitled to continued notice or the right to appear in any subsequent proceedings relating to J.B.

¶8 This appeal followed.

## STANDARD OF REVIEW

¶9 This Court reviews a trial court's findings of fact regarding the statutory criteria for clear error. *In re R.M.T.*, 2011 MT 164, ¶ 27, 361 Mont. 159, 256 P.3d 935 (citation omitted). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made. *In re C.J.M.*, 2012 MT 137, ¶ 10, 325 Mont. 298, 280 P.3d 899 (citation omitted).

¶10 This Court reviews a trial court's conclusions of law de novo to determine whether the law was interpreted correctly. *In re C.J.M.*, ¶ 10 (citation omitted). A trial court's conclusion is presumed correct and will not be disturbed unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *In re M.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047 (citation omitted).

4

¶11    *1. Did the District Court err when it dismissed N.L. as a party?*

¶12    It is the policy of the state of Montana to provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for the children's care and protection. Section 41-3-101(1)(a), MCA. The "district court is bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children." *In re Custody & the Parental Rights of C.J.K.*, 2005 MT 67, ¶ 14, 326 Mont. 289, 109 P.3d 232; *In re A.H.D.*, 2008 MT 57, ¶ 13, 341 Mont. 494, 178 P.3d 131. When "implementing the policy of [Title 41], the child's health and safety are of paramount concern." Section 41-3-101(7), MCA. We have therefore concluded that "the best interests of the child are our paramount concern in a parental rights termination proceeding and take precedence over parental rights." *In re C.J.K.*, ¶ 14. Consequently, the best interests of the child are of paramount concern in any proceeding under Title 41.

¶13    The Child Abuse and Neglect provisions of the Code do not delineate or define who the parties to an abuse and neglect proceeding are. When a petition is filed by DPHHS, it is captioned with the child's identity only and contains within the petition pertinent information relating to the child's parents, guardians, or persons having legal custody. Review of the various statutory provisions contained throughout Title 41 nevertheless establishes who may participate, receive notice, and qualify for appointed counsel.

¶14    First, DPHHS is the only agency that may initiate abuse and neglect proceedings. Sections 41-3-301(6), -422(2)(a), MCA. The county attorney or attorney general must file an initial petition supported by a child protective social worker's affidavit to begin the process. Sections 41-3-301(6), -422(2)(a), MCA. DPHHS, as the only agency capable of initiating an abuse and neglect proceeding, is a party to that proceeding.

¶15    Second, "[a]ny party involved in a petition . . . has the right to counsel in all proceedings held pursuant to the petition." Section 41-3-425(1), MCA. This statute requires a district court automatically appoint counsel for "any indigent parent, guardian, or other person having legal custody of a child or youth in a removal, placement or termination proceeding" and "any child or youth involved in a proceeding" when a guardian ad litem is not appointed.[1] Section 41-3-425(2), MCA. Although a parent is defined as "a biological or adoptive parent or stepparent," § 41-3-102(16), MCA, a stepparent is not defined within Title 41. Based upon § 41-3-425(2), MCA, those who are listed as entitled to counsel are considered to be parties to the action. Thus, parents (including an adoptive or stepparent), guardians or persons having legal custody are parties, because they are entitled to counsel. Although § 41-3-425(2), MCA, provides the court with discretion to appoint counsel for the child, we have recognized that children have standing to appeal the dismissal of DPHHS petition for their adjudication as youth in need of care. *In re K.H.*, 2012 MT 175, ¶ 25, 366 Mont. 18, 285 P.3d 474.

---

[1] N.L. does not question the statutory meaning of the term "guardian" or argue that he qualifies as J.B.'s guardian, nor does he raise an issue concerning the distinction between legal custody and physical custody. Neither of those issues is before the Court or addressed in this Opinion.

¶16 Finally, § 41-3-422(9)(a), MCA, provides that "[a]ny foster parent, preadoptive parent, or relative caring for the child" is granted the right to appear, be heard, and to receive legal notice. "The right to be heard does not make that person a party to the proceeding." Section 41-3-422(9)(a), MCA. However, these same persons—a "foster parent, preadoptive parent, or relative caring for the child"—in addition to a "relative of the child who has cared for a child" are entitled to file a motion to intervene pursuant to § 41-3-422(9)(b), MCA, if they have appeared at a hearing held under this section. We explained in *In re K.H.*, ¶ 25, that by specifically identifying those persons who are currently caring for the child (i.e., foster parent, preadoptive parent, or relative) and those relatives who have cared for the child, the Legislature intended to recognize an interest that entitled the person to request intervention into the proceeding. While those defined may not have a parental interest or right otherwise recognized regarding the child, they have an interest which the Legislature, in the context of § 41-3-422, MCA, saw fit to legally recognize.

¶17 In summary, DPHHS initiates abuse and neglect proceedings and is a party to those proceedings. A parent (including an adoptive or stepparent), guardian, or one with legal custody of the child and a child have a right to counsel and are also parties to the proceeding. Finally, any foster parent, preadoptive parent, or relative caring for the child or a relative of the child who has cared for a child are allowed to file a motion to intervene and may also be a party.

¶18 For N.L. to be considered a party to J.B.'s proceedings, one of the aforementioned statutory provisions must apply to his circumstances. Here, N.L. concedes he is not a

7

biological parent to J.B. N.L. did not adopt J.B., nor was he ever married to J.B.'s mother. N.L. is not a relative of J.B. nor is he J.B.'s guardian. N.L. does not have legal custody of J.B. Instead, N.L. urges this Court consider him a stepparent to J.B., despite having never married M.H., because of the parent-child relationship he formed with J.B.

¶19 Title 41 does not explicitly define the term stepparent. However, in the context of a stepparent adoption, the Code describes a stepparent as the spouse of someone with a child. "A stepparent has standing to file a petition for adoption of a minor child of the stepparent's *spouse.*" Section 42-4-302(1), MCA (emphasis added). Similarly, review of our case law establishes that a stepparent in Montana is someone who is married to a child's biological parent. *See In re Adoption of K.P.M.*, 2009 MT 31, ¶ 7, 349 Mont. 170, 201 P.3d 833 (biological father's wife petitioned court for stepparent adoption); *J.C. v. Eleventh Judicial Dist. Court*, 2008 MT 358, ¶ 9, 346 Mont. 357, 197 P.3d 907 (biological mother's husband petitioned court for stepparent adoption); *In re Marriage of Paradis*, 213 Mont. 177, 178, 181, 689 P.2d 1263, 1264, 1265 (1984) (biological parents each remarried subsequent to their divorce creating two stepparents for their child). Also, the common meaning associated with a stepparent is "the spouse of one's mother or father by a later marriage." *Black's Law Dictionary* (Bryan A. Garner ed., 9th ed. 2009). Our statutes and case law describe a stepparent as the spouse of a child's biological parent. We decline, at this juncture, to expand that definition to include anyone other than the spouse of a child's biological parent.

¶20 Finally, N.L. does not contend that his relationship with M.H. constituted a common law marriage. Therefore, the issue of whether N.L. and M.H. formed a common

8

law marriage, arguably establishing N.L. as a stepparent, is not before this Court. We recognize that bonds established between a child and adult may not always be aptly characterized by a statutory definition and that consideration of these special relationships by a court is perhaps appropriate when determining the child's best interest. Nevertheless, we are constrained here by the facts presented, the arguments raised by counsel, and the specific language of relevant statutory provisions. N.L. cannot be considered a party to J.B.'s proceedings because he is not entitled to notice or appointment of counsel under §§ 41-3-422(9)(a) or -425, MCA, and he is not entitled to intervene pursuant to § 41-3-422(9)(b), MCA. We find the District Court did not err in dismissing N.L. as a party to J.B.'s proceeding.

¶21     *2. Did the District Court err when it denied N.L.'s request to appear at J.B.'s proceedings pursuant to § 41-3-422(9)(a), MCA?*

¶22     Section 41-3-422(9)(a), MCA, provides, in relevant part:

> Any person interested in any cause under this chapter has the right to appear. Any foster parent, preadoptive parent, or relative caring for the child must be given legal notice by the attorney filing the petition of all judicial hearings for the child and has the right to be heard. The right to appear or to be heard does not make that person a party to the action. Any foster parent, preadoptive parent, or relative caring for the child must be given notice of all reviews by the reviewing body.

N.L. argued in the District Court that he had the right to continue appearing at J.B.'s proceedings pursuant to § 41-3-422(9)(a), MCA, as a "person interested" in the cause, even after being dismissed as a party. The District Court disagreed, finding the term "[a]ny person interested in any cause," as used in § 41-3-422(9)(a), MCA, required that the person have a legal interest in the proceedings. Reasoning that N.L. was a legal

9

stranger to J.B., with no legal interest in the outcome of the proceedings, the District Court concluded N.L. had no right to continue appearing at J.B.'s proceedings as a "person interested." We disagree.

¶23 Instead of the narrow definition of "interested person" adopted by the District Court, we construe the term "[a]ny person interested in any cause" consistent with principles of statutory construction and according to its plain meaning. Section 1-2-106, MCA ("Words and phrases used in the statutes of Montana are construed according to the context and the approved usage of the language"). The phrase "[a]ny person interested in any cause" is not defined within Title 41. However, its plain meaning would indicate that "any" person who has an interest in the welfare or best interests of the child who is the subject of the petition, has a right to appear at hearings concerning the child. "The Legislature need not define every term it employs in a statute. If a term is one of common usage and is readily understood, a court should presume that a reasonable person of average intelligence can understand it." *State v. Madsen*, 2013 MT 281, ¶ 9, 372 Mont. 102, 317 P.3d 806 (citing *State v. Trull*, 2006 MT 119, ¶ 33, 332 Mont. 233, 136 P.3d 551). Furthermore, the plain language of the statute connects "interested person" only to a right to appear and does not afford the interested person a right to notice or to be heard.

¶24 We observe also that the plain language of § 41-3-422, MCA, is consistent with the Legislature's directive to protect the interests of children. We will not place a more restrictive meaning on a phrase which is contrary to its common usage and in the absence of direction from the Legislature to do so. In the context of a conservatorship, this Court

declined to place a narrow construction on the phrase "interested person" where the Legislature's language likely intended a broader definition. *In re Conservatorship of Kloss*, 2005 MT 39, 326 Mont. 117, 109 P.3d 205. There, Kloss argued a narrower interpretation of "interested person" found in the probate statutes should govern who may petition for appointment of a conservator, instead of the relevant conservatorship statute's broader language of "any person who is interested in [the protected] person's . . . welfare." *Kloss*, ¶ 9. In denying Kloss's request, this Court recognized "that conservatorship proceedings exist to promote the best interests of the protected person," *Kloss*, ¶ 10 (citation omitted), and concluded that the Legislature's use of the phrase "any person who is interested" in the conservatorship statute read "broadly enough to include those interested in the welfare of the protected person." *Kloss*, ¶ 10.

¶25 In the absence of a specific statutory provision to the contrary, the Legislature's use of the words "any person" will be given its plain meaning. Consistent with *Kloss* and the Legislature's effort to provide for the well-being of protected persons, we will not constrict the wide net cast by the Legislature to ensure that those who have the child's best interests at heart can be present, and thereby monitor the care, nurturing, and support that is claimed to be provided to the child in these proceedings. Indeed, such a construction is supported by the provisions of § 41-3-437(4), MCA, allowing for the court to hear evidence offered by a person appearing pursuant to § 41-3-422(9)(a) or (9)(b), MCA, regarding circumstances surrounding abandonment of a child.

¶26 Both N.L. and DPHHS agree that the District Court erred by interjecting into § 41-3-422(9)(a), MCA, a definition for "interested person" derived from provisions of

11

the Code other than Title 41. N.L. and DPHHS also agree that, read plainly, "any person interested in any cause" provides anyone interested in a child who is the subject of an abuse and neglect proceeding a right to appear at that proceeding. DPHHS nevertheless argues that the right to appear would be meaningless if such an interested person was not also granted a right to notice or to be heard. Accordingly, DPHHS maintains that the District Court was correct in denying N.L. a right to appear at hearings pertaining to J.B. because N.L. did not have a right to notice or to be heard.

¶27 The plain language of § 41-3-422(9)(a), MCA, distinguishes between a "person interested," who has a right to appear, and a "foster parent, preadoptive parent, or relative caring for the child," who has the right to legal notice and the right to be heard. By specifically identifying foster parents, preadoptive parents, and relatives caring for the child, the Legislature has recognized a more specific group of persons than "any person interested" who are to be afforded additional rights—the right to notice and to be heard, as well as the right to file a request to intervene as a party. Clearly a foster parent, preadoptive parent, or relative caring for the child have an identifiable relationship with the child beyond mere interest. The provisions affording more rights to a foster parent, preadoptive parent, or relative caring for the child do not render meaningless an interested person's right to appear.

¶28 Under § 41-3-422(9)(a), MCA, we conclude N.L. is a person interested in J.B.'s cause and has a right to appear at hearings pertaining to J.B. N.L. does not have the right to notice or a right to be heard pursuant to § 41-3-422(9)(a), MCA, because N.L. is not J.B.'s foster parent, preadoptive parent, or relative. Nevertheless, although there is no

12

affirmative obligation placed on the court, parties, clerk of court, or others to provide a "person interested" with notice of hearings, a person interested in the proceedings may make his or her own inquiry regarding the date, time and place of scheduled court hearings and is entitled to be advised. Further, nothing in the statutory provisions prevents a court from exercising its discretion to entertain comments, input, or participation from an interested person if, in the court's discretion, such input would assist the court in its decision regarding the child's best interests. Importantly, the right to appear as an interested person does not override confidentiality provisions found in Title 41 and, in exercising its discretion, a court may exclude an interested person to prevent confidential disclosures. The District Court erred when it denied N.L.'s request to appear at J.B.'s proceedings pursuant to § 41-3-422(9)(a), MCA.

**CONCLUSION**

¶29 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ LAURIE McKINNON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER

13