# FILED

June 26 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0047 and DA 12-0048

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 137

IN THE MATTER OF:

C.J.M. and A.J.M.,

    Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause Nos. DN 09-067(B) and DN-09-068(B)<br>Honorable Katherine R. Curtis, Presiding Judge |

COUNSEL OF RECORD:

    For Appellant:

    Elizabeth Thomas, Attorney at Law, Missoula, Montana

    For Appellee:

    Steve Bullock, Montana Attorney General; Katie F. Schulz, Assistant Attorney General, Helena, Montana

    Ed Corrigan, Flathead County Attorney; Katie F. Schulz, Deputy County Attorney, Kalispell, Montana

Submitted on Briefs: May 30, 2012

Decided: June 26, 2012

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    I.M. (Father) appeals the orders of the Eleventh Judicial District Court, Flathead County, terminating his parental rights to his daughter A.J.M. and his son C.J.M.  We affirm.

## BACKGROUND

¶2    Father is the biological father of A.J.M. and C.J.M.  When the District Court terminated Father's parental rights, A.J.M. was 7 years old and C.J.M. was 5 years old.  The children's biological mother, J.M. (Mother), had her parental rights terminated on February 18, 2011.  Mother is not a part of this appeal.

¶3    Concerns regarding the children's welfare date back to March of 2009.  The Department of Public Health and Human Services (DPHHS) contacted the family and made recommendations, but the parents did not follow through.  Father reported Mother to DPHHS in July of 2009 with concerns about her drinking and inability to care for the children.  After Father's call, the children were removed.  Upon stipulations by both Mother and Father, the children were adjudicated Youths in Need of Care on August 14, 2009.

¶4    All parties acknowledge that both A.J.M. and C.J.M. have significant issues and parenting needs.  A.J.M. exhibits sexualized behaviors, and exhibits severe behavioral problems such as tantrums, meltdowns, and sexual touching.  A.J.M. has been diagnosed with reactive attachment disorder and adjustment disorder with anxiety.  A.J.M. currently resides in foster care.  C.J.M. has significant developmental delays, and has been diagnosed with pervasive developmental disorder, NOS; global delays in speech, language, cognition, and motor skills; and the genetic disorder Fragile X Syndrome.  C.J.M. also suffers from

2

seizures. C.J.M. takes medication for ADHD, aggression, and to help him sleep. C.J.M. currently resides at Shodair Children's Hospital and requires constant one-on-one care. Further, it is alleged that A.J.M. was sexually abused by Mother, Father, and another man. Father adamantly denies this allegation.

¶5      In June of 2009, Father moved to Washington State. DPHHS developed a Treatment Plan (the "Plan") for Father, and both Father and his attorney approved the Plan. The District Court ordered the Plan implemented on December 30, 2009. The Plan required that Father would, among other things:  attend parenting classes, pursue training regarding C.J.M.'s developmental and emotional delays, visit the children, participate in counseling if he wished, obtain and maintain employment, and secure appropriate housing.

¶6      In May of 2010, while Father lived in Washington, a home study was conducted by a Washington social worker to determine if the home was suitable for placement of the children with Father. The social worker found it was not. The social worker also noted that Father had not completed the Plan, aside from taking a parenting class and phone visitation, and was "not knowledgeable regarding his children's needs and special needs."

¶7      In August of 2010, Father abruptly moved to Kalispell, Montana, from Washington. Father did not have a full-time job or stable housing in Kalispell. Father and the children worked with Jessica Kyser, M.S.W., L.C.S.W. (Kyser), on a weekly basis from September to December, 2010. Kyser found Father to be willing and compliant, but did not appear to grasp the gravity of his children's issues. Kyser found Father's progress with his treatment plan was "minimal."

¶8 Phase II of Father's treatment plan was agreed to by Father and his counsel, and implemented by the District Court on November 23, 2010. Shortly thereafter, A.J.M. was transitioned to a therapeutic foster home in Missoula, Montana, and C.J.M. was moved to Shodair Children's Hospital. The moves were due to the high level of care the children required. In January of 2011, Father planned to move to Columbia Falls, Montana, but quickly moved to Missoula, Montana, to pursue a truck driving career instead. Within six weeks of being in Missoula, Father moved in with a woman. Father did not keep his visitation schedule with either A.J.M. or C.J.M.

¶9 From August 2009 to June 2011, several extensions of temporary custody were granted to allow Father more time to complete the Plan. However, in June of 2011, DPHHS filed a Petition to Terminate Father's parental rights. Hearings were held November 2, 3, and 22, 2011. The District Court terminated Father's parental rights to A.J.M. on December 28, 2011, and C.J.M. on December 20, 2011. The District Court found that: 1) termination was statutorily presumed to be in both A.J.M.'s and C.J.M.'s best interest due to the length of time each had been in foster care; 2) Father's treatment plans were appropriate; 3) Father did not comply with the treatment plans; 4) the conditions rendering Father unfit or unable to parent would not likely change within a reasonable amount of time, and 5) the best interests of A.J.M. and C.J.M. would indeed be served by termination of Father's parental rights. This timely appeal follows.

**STANDARDS OF REVIEW**

4

¶10 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. *In the Matter of A.H.D.*, 2008 MT 57, ¶ 11, 341 Mont. 494, 178 P.3d 131. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re Custody and Parental Rights of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, 10 P.3d 232 (internal citations omitted). We review the district court's findings of fact to determine whether they are clearly erroneous. *In the Matter of J.C.*, 2008 MT 127, ¶ 34, 343 Mont. 30, 183 P.3d 22. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made. *J.C.*, ¶ 34. Lastly, we review the court's conclusions of law to determine whether the court interpreted the law correctly. *C.J.K.*, ¶ 13.

## DISCUSSION

¶11 Pursuant to § 41-3-609(1), MCA, a court may terminate parental rights to non-Indian children if the following exist:

> (f) the child is an adjudicated youth in need of care and both of the following exist:
>> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶12 Primary consideration shall be given to the physical, mental, and emotional conditions and needs of the child. Section 41-3-609(3), MCA. The best interests of the child or

children take precedence over the parental rights. *C.J.K.*, ¶ 14. "If a child has been in foster care . . . for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Section 41-3-604(1), MCA.

¶13    Father takes issue with two findings of the District Court. He argues that: 1) its determination that DPHHS made reasonable efforts to reunify him with his children was error because the treatment plans were inappropriate, and 2) its finding that he was unlikely to change in a reasonable amount of time was not supported by clear and convincing evidence. We address each below.

**The Treatment Plans**

¶14    The District Court found that Father's treatment plans were appropriate and that DPHHS made reasonable efforts to reunite Father and the children. It found that Father "has not demonstrated that he fully understands the significance of either of his children's needs and how extensive his parenting efforts must be in order to sufficiently meet those needs." Father argues the District Court erred because he was never assessed to determine if he has specific needs or limitations. Father now apparently claims he "might have Asperger's or some other form of autism" which may account for his inability to understand and process information. He alleges that because DPHHS did not assess him, his treatment plans were inherently flawed and inappropriate. He also alleges that the treatment plans did not take the children's special needs into consideration.

¶15    When evaluating a treatment plan for appropriateness, we generally consider: 1) whether the parent was represented by counsel, 2) whether the parent stipulated to the

treatment plan, and 3) whether or not the treatment plan takes into consideration the particular problems facing both the parent and child or children. *In the Matter of A.F.-C.*, 2001 MT 283, ¶ 29, 307 Mont. 358, 37 P.3d 724; *In the Matter of A.A.*, 2005 MT 119, ¶ 21, 327 Mont. 127, 112 P.3d 993.

¶16 Here, Father was represented by counsel and stipulated to the treatment plans. Significantly, Father never objected to the treatment plans, nor did he request any additional evaluations for himself or the children. Father's failure to object waived his argument regarding the propriety of the treatment plans. *A.A.*, ¶ 28.

## Clear and Convincing Evidence

¶17 Next, Father argues that the District Court's conclusion that he was unlikely to change in a reasonable amount of time was not supported by clear and convincing evidence.

¶18 When reaching such conclusions, the district courts are guided by § 41-3-609(2), MCA, which provides:

> In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider *but is not limited to* the following:
> (a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;
> (b) a history of violent behavior by the parent;
> (c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and
> (d) present judicially ordered long-term confinement of the parent.

(Emphasis added.) In considering these factors, "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA. The district court should also "assess a parent's past and present conduct[.]" *In the Matter of D.H.*, 2001 MT 200, ¶ 32, 306 Mont. 278, 33 P.3d 616.

¶19 The record before the Court is replete with evidence showing that Father made little to no progress on the treatment plans. Father himself testified that he "needed more time." His social worker, Kyser, found his progress was "minimal" and that "[Father] did not make marked gains in understanding his children's specific needs. While information was provided to him, he did not seek to gain a deeper understanding of his children's needs. . . ." Given the extraordinary amount of care both A.J.M. and C.J.M. require, Father's minimal progress and non-compliance with his treatment plans over the course of two years shows he was unlikely to change in a reasonable amount of time. The children need permanence and care now, and their needs are paramount to Father's. *See In the Matter of E.K.*, 2001 MT 279, ¶ 48, 307 Mont. 328, 37 P.3d 690.

## CONCLUSION

¶20 The District Court did not abuse its discretion when it terminated Father's parental rights to A.J.M. and C.J.M. Father waived his right to object to the appropriateness of the treatment plans. The District Court's finding that Father was unable to change within a reasonable amount of time is supported by clear and convincing evidence and is not clearly erroneous.

¶21 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE