DA 12-0287

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 253N

IN THE MATTER OF:

I.T. and J.L.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause Nos. BDN 2010-04 and BDN-2010-06
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Elizabeth Thomas, PLLC, Attorney at Law, Missoula, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Katie F. Schulz, Assistant Attorney General, Helena, Montana

      Leo Gallagher, Lewis and Clark County Attorney; Tara Harris, Deputy County Attorney, Helena, Montana

Submitted on Briefs:   September 26, 2012

Decided:   November 8, 2012

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      J.W., birth mother ("Mother"), appeals from an order terminating her parental rights to her son, J.L., and her daughter, I.T., entered by the First Judicial District Court, Lewis and Clark County. We affirm.

¶3      The Montana Department of Public Health and Human Services ("DPHHS") removed J.L., now age 7, and I.T., now age 4, from Mother on March 3, 2010, based upon concerns that the children had witnessed domestic violence and were living in unsafe and unsanitary conditions. DPHHS subsequently filed a Petition for Emergency Protective Services, Temporary Investigative Authority, Adjudication as a Youth in Need of Care, and for Temporary Legal Custody ("Petition") on March 10, 2010. Mother stipulated both children were Youths in Need of Care on April 8, 2010, and a Preservation Meeting was conducted on April 9, 2010. Participants at the meeting included Mother, a friend of Mother, the paternal grandparents, the maternal aunt and uncle, a CASA volunteer, DPHHS child protection specialists, and members of Headstart and A.W.A.R.E. Such meetings are a collaborative effort among all participants to establish goals, discuss the family's concerns and strengths, and develop a treatment plan ("Plan"). The Plan's first goal was reunification, and towards that end it required Mother attend and participate in mental health services, domestic violence counseling, and parenting counseling, that she maintain safe and

2

appropriate housing, participate in DPHHS visitations, and participate in all her children's services and appointments. Mother and her attorney signed the Plan, as did the children's attorney, the DPHHS social worker, and the DPHHS attorney. The court approved the Plan on September 24, 2010.

¶4 On October 14, 2011, DPHHS petitioned for termination of Mother's parental rights, alleging that an appropriate treatment plan had been approved and that it had neither been complied with nor successful. A hearing on the termination petition was held on February 28, 2012, and both DPHHS and Mother presented testimony. In the resulting order, the District Court found that the Plan was appropriate, that Mother had been unable to complete it, the conduct and conditions rendering her unfit were not likely to resolve within a reasonable time, and that termination of her parental rights was in the best interests of J.L. and I.T.

¶5 Regarding the children, J.L. has been diagnosed with oppositional defiance disorder, generalized anxiety disorder, ADHD, and parent/child relational problems. I.T. has Down Syndrome and is developmentally delayed. Dr. Bowman Smelko ("Dr. Smelko") conducted a Psychological Assessment of Mother in December of 2010, and determined that her cognitive level was lower than average and diagnosed her with major depressive disorder, post-traumatic stress, and cluster B personality traits. The Plan sought to address these needs by requiring Mother to attend individual mental health, family, and parenting counseling, learn housing and organizational skills, engage in supervised visitations, and participate in her children's weekly physical, occupational, and family therapy sessions.

3

¶6 We review a district court's order terminating parental rights for an abuse of discretion. *In re J.M.*, 2009 MT 332, ¶ 12, 353 Mont. 64, 218 P.3d 1213. The trial court's findings of fact are reviewed for clear error and we review its conclusions of law for correctness. *In re D.B.*, 2008 MT 272, ¶ 13, 345 Mont. 225, 190 P.3d 1072.

¶7 A court may terminate parental rights if "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful" and the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. As a natural parent's right to the care and custody of a child is a fundamental liberty interest, DPHHS bears the burden of proving that a plan is appropriate by clear and convincing evidence. Section 41-3-609(1), MCA; *In re A.N.*, 2000 MT 35, ¶ 24, 298 Mont. 237, 995 P.2d 427. There is no "bright line" definition of appropriateness, but a court may consider whether the plan takes the particular problems facing the parents and children into consideration, whether the parent was represented by counsel, and whether they signed or stipulated to the plan. *A.N.*, ¶ 26. Here, the court found the Plan to be appropriate, that Mother had failed to comply with every requirement of the plan, and that her conduct was unlikely to change within a reasonable amount of time. Based on these findings, the court terminated her parental rights.

¶8 On appeal, Mother challenges the termination of her parental rights by asserting that the court erroneously found that the Plan was appropriate. She specifically claims the Plan was inappropriate insofar as it failed to take both her and her children's specific needs into account. Essentially, Mother now challenges a plan she expressly endorsed, continued to abide by, and ultimately failed to complete. The Plan included warnings that "failure to

4

comply with this Treatment Plan will result in continued court action," and that "the parent is obligated to comply with the court-ordered treatment plan or risk termination of their parental rights." Mother and her counsel participated in the formulation of the plan and both signed it. Indeed, this is the first time that Mother has raised issues with the appropriateness of the Plan, despite several extensions of Temporary Legal Custody to allow her to complete it. Accordingly, Mother has waived her claim of inappropriateness by endorsing the Plan and continually acquiescing to it without objection. Section 1-3-207, MCA; *In re C.J.M.*, 2012 MT 137, ¶ 16, 365 Mont. 298, 280 P.3d 899; *In re A.A.*, 2005 MT 119, ¶ 26, 327 Mont. 127, 112 P.3d 993. She may not now challenge its appropriateness on appeal.

¶9      We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The legal issues are controlled by settled Montana law.

¶10     Affirmed.

                                              /S/ MICHAEL E WHEAT

We Concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER
/S/ BRIAN MORRIS