DA 15-0356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 68

IN THE MATTER OF:

J.B., Jr.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN 13-120
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tracy Labin Rhodes, Attorney at Law; Missoula, Montana (for Father)

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General; Helena, Montana

          Karen P. Kane, Assistant Attorney General; Missoula, Montana

Submitted on Briefs:  February 10, 2016

Decided:  March 22, 2016

Filed:

_____
               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 J.B., Sr., appeals from an order entered by the Fourth Judicial District Court, Missoula County, terminating his parental rights to J.B., Jr.

¶2 We affirm, and address the following issues:

1. *Did the District Court err by holding the treatment plan was appropriate?*

2. *Did the District Court abuse its discretion by terminating Father's parental rights?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 J.B., Jr. (J.B.) was only a few weeks old when his parents, J.B., Sr. (Father), and K.S. (Mother), took him shoplifting at Missoula's JC Penney store. When confronted by security, Mother fled in her car with J.B. Father pulled a knife, declaring he was "not returning to prison," and fled on foot. At the time, Father was on probation, and two outstanding felony warrants for his arrest had been issued from Ravalli County.

¶4 Long before this incident, the Department of Public Health and Human Services, Child and Family Services Division (Department), were familiar with Mother and Father. The Department had previously been involved with proceedings regarding J.B.'s siblings, including the termination of Father's parental rights to J.B.'s brother, E.B., on grounds of abandonment. After receiving the report of the shoplift-turned-robbery, the Department investigated the incident and filed a petition for Emergency Protective Services, Adjudication of J.B. as a Youth in Need of Care, and Temporary Legal Custody. The District Court granted the Department's petition upon Mother's and Father's stipulation

2

to the adjudication of J.B. as a Youth in Need of Care. J.B. was then placed in a foster home with his sibling, E.B.

¶5 In the Ravalli County action related to the two outstanding felony warrants, Father was sentenced to ten years suspended on each felony, to run concurrently with an unspecified sentence Father was serving in another Ravalli County action. The record does not indicate the length of the other sentence. In the Missoula County robbery action that arose from the incident here, the District Court, citing Father's seven prior felony convictions, sentenced him to the Department of Corrections for 20 years with 18 years suspended, to run concurrently with his sentences in Ravalli County.

¶6 The Department provided a treatment plan for Father while he was incarcerated, which was intended to preserve Father's parent-child relationship with J.B. The treatment plan had several goals designed to provide the Department with "the necessary information to determine whether it will be safe for [J.B.] to return to [Father's] care," and to instill "long-term change and . . . lasting stability so that further intervention by [the Department] is no longer needed." The treatment plan required Father to perform numerous tasks, including refraining from committing further criminal offenses, completing a chemical dependency evaluation, and attending available parenting classes. The treatment plan stated the completion date for these tasks was "ongoing." Father, represented by counsel, stipulated to the treatment plan.

¶7 Although Father completed a chemical dependency evaluation and attended group therapy sessions, he was involved in numerous behavioral incidents while incarcerated,

3

including flooding his cell, breaking a sprinkler head, and not complying with orders. At the termination hearing, Father testified:

> Q: When you went into Missoula County Detention Facility in June of 2014, you were involved in several behavioral incidents in there, correct?
>
> A: Yes, a few.
>
> Q: Including flooding your cell?
>
> A: Yes.
>
> Q: Breaking a sprinkler head?
>
> A: Yes.
>
> Q: Disruptive behavior and not complying with orders?
>
> A: Yes.
>
> Q: And then just recently in boot camp you were disciplined for violating and refusing to comply with a direct order, correct?
>
> A: Yes.

¶8 The Department, alleging Father's treatment plan had not been successful, petitioned the District Court to terminate Father's parental rights to J.B. The District Court agreed, holding the treatment plan "was not successful" and that Father had an "inability to conform his conduct to the law" that was "unlikely to change within a reasonable time." J.B. had been living in foster care with his brother, E.B., for over 15 months at that time. Father appeals.[1]

---

[1] Mother's parental rights to J.B., Jr., were also terminated by the District Court. She filed an appeal, which was initially consolidated with Father's appeal herein but ultimately dismissed upon her counsel's motion to withdraw and this Court's independent examination of the record pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the ground that an appeal in her case would be wholly frivolous.

## STANDARD OF REVIEW

¶9 Conclusions of law are reviewed to determine whether the district court interpreted the law correctly. *In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, 977 P.2d 317.

¶10 A district court's decision to terminate parental rights is reviewed for an abuse of discretion. *In re A.N.W.*, 2006 MT 42, ¶ 29, 331 Mont. 208, 130 P.3d 619. Findings of fact are reviewed for clear error. *In re D.B.*, 2007 MT 246, ¶ 18, 339 Mont. 240, 168 P.3d 691. A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces the Court a mistake was made. *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899. We view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *In re B.D.*, 2015 MT 339, ¶ 5, 381 Mont. 505, 362 P.3d 636.

¶11 A district court's decision will not be disturbed on appeal unless there is a mistake of law or a finding of fact clearly erroneous that amounts to an abuse of discretion. *In re M.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047.

## DISCUSSION

¶12 Under § 41-3-609(1)(f), MCA, a court may terminate parental rights upon a finding, established by clear and convincing evidence, that the child is an adjudicated youth in need of care and both of the following exist:

> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶13     Father makes two challenges on appeal. First, he argues the District Court erred by concluding the treatment plan was appropriate. Second, he argues the District Court erred by concluding the treatment plan was not successful.

¶14     *1. Did the District Court err by holding the treatment plan was appropriate?*

¶15     Father argues the treatment plan was not appropriate because it provided no deadlines, instead stating the completion date for each task was "ongoing." The Department counters that Father did not properly preserve this issue for review by timely objecting to the treatment plan.

¶16     "Where a parent fails to object to a treatment plan in a timely manner, the parent waives any argument regarding the propriety of the treatment plan." *In re T.S.*, 2013 MT 274, ¶ 25, 372 Mont. 79, 310 P.3d 538 (citing *In re C.J.M.*, 2012 MT 137, ¶ 16, 365 Mont. 298, 280 P.3d 899); *see also In re A.A.*, 2005 MT 119, ¶¶ 21-28, 327 Mont. 127, 112 P.3d 993 (parent who, with representation of counsel, stipulated to several treatment plans, and failed to object in a timely manner, waived her argument that the treatment plans were not appropriate).

¶17     The treatment plan, upon Father's stipulation, was approved by the District Court in March 2014. Father was represented by counsel. It was not until just before the termination hearing, in March 2015, that Father raised an objection to the lack of deadlines in his treatment plan. If Father was legitimately concerned about the lack of

deadlines in the treatment plan, he could have raised the issue when the plan was before the District Court for approval. Neither did Father raise a concern about the lack of deadlines during the course of the plan's implementation, waiting until right before the termination hearing to raise the issue. We agree with the Department. Under *T.S.*, Father waived his argument.

¶18 *2. Did the District Court abuse its discretion by terminating Father's parental rights?*

¶19 Father argues the District Court abused its discretion because its legal conclusion that Father's treatment plan was not successful was based on the finding that Father's incarceration rendered the plan unsuccessful—a rationale we expressly forbade in *In re A.T.*, 2003 MT 154, 316 Mont. 255, 70 P.3d 1247. While we acknowledge Father's point regarding sole reliance on incarceration contemplated by a treatment plan, we affirm the District Court because of additional findings sufficient to support the District Court's conclusion that the plan was unsuccessful.

¶20 Section 41-3-609(1)(f)(i), MCA, is written in the disjunctive: the Department can meet its burden by showing either the treatment plan has not been complied with, "or has not been successful." We have recognized that the disjunctive language indicates a district court may find a treatment plan unsuccessful "even if the parent has completed all the required tasks." *In re D.F.*, 2007 MT 147, ¶ 36, 337 Mont. 461, 161 P.3d 825 (citing *In re A.F.*, 2003 MT 254, ¶ 25, 317 Mont. 367, 77 P.3d 266); *see also In re D.A.*, 2008 MT 247, ¶ 22, 344 Mont. 513, 189 P.3d 631 ("Well-intentioned efforts toward successful completion of a treatment plan do not demonstrate either the completion or the success of

7

the plan.") (citation omitted). However, a district court may not conclude the treatment plan has been unsuccessful simply because of a parent's incarceration status when the parent's incarceration status was known and considered by the Department when formulating the plan. *A.T.*, ¶ 24.

¶21 The District Court's conclusion that the treatment plan was unsuccessful was based in part on Finding of Fact 13, which stated Father "has been incarcerated since the inception of this case and was not released from his incarceration so that he could parent [J.B.]." The Department's treatment plan expressly considered Father's incarceration and nothing in the record indicates Father's sentence was altered from that which the Department contemplated when it formulated the treatment plan. Had the District Court relied on nothing more, the District Court's decision to terminate may well have conflicted with our decision in *A.T.* However, a review of additional findings establishes adequate grounds for termination.

¶22 To terminate parental rights under § 41-3-609(1)(f), MCA, a district court must make two basic findings. First, the district court must find the treatment plan "has not been complied with . . . or has been unsuccessful." Section 41-3-609(1)(f)(i), MCA. Second, the district court must find "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f)(ii), MCA. The phrase, "*the* conduct or condition" (emphasis added), indicates that § 41-3-609(1)(f)(ii), MCA, is referring to a prior finding of a conduct or condition that has rendered the parent unfit. Given the statute does not expressly require the district

court to make such a finding, the meaning of the statute is that the condition rendering the parent unfit is the condition(s) or reason(s) in § 41-3-609(1)(f)(i), MCA, that caused the treatment plan to be unsuccessful.

¶23 Finding of Fact 14 states "Father's conduct or condition of inability to conform his conduct to the law resulting in incarceration, and inability to remain free of illicit drugs when out of incarceration, is unlikely to change within a reasonable time." The District Court's finding that Father had an "inability to conform his conduct to the law," if supported by the evidence, establishes the condition that rendered Father unfit, i.e., the condition that rendered the treatment plan unsuccessful.[2]

¶24 Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion, even if weak and conflicting. *Siebken v. Voderberg*, 2015 MT 296, ¶ 12, 381 Mont. 256, 359 P.3d 1073. It consists of more than a mere scintilla of evidence but may be less than a preponderance. *Marriage of Schmitz*, 255 Mont. 159, 165, 841 P.2d 496, 500 (1992). Further, it is presumed that terminating a parent's rights is in the child's best interests when the child has been in foster care for 15 of the last 22 months. *D.B.*, ¶ 40 (citing § 41-3-604(1), MCA). The presumption is not a sufficient basis, by itself, to terminate parental rights. *D.B.*, ¶ 40.

---

[2] It is insignificant here that the District Court articulated this finding to follow the language in § 41-3-609(1)(f)(ii), MCA, and not § 41-3-609(1)(f)(i), MCA. The District Court could have satisfied both subsections by finding "the treatment plan was unsuccessful because of Father's inability to conform his conduct to the law" and then finding "that condition is unlikely to change within a reasonable time." As long as the condition found to render the parent unfit, i.e., the condition rendering the treatment plan unsuccessful, is clearly articulated in a district court's findings, as here, the particular formulation of the finding will generally not matter. Section 1-3-219, MCA ("The law respects form less than substance.").

9

¶25 Although it appears Father had completed several tasks of his plan, the uncontroverted evidence establishes that Father had acted out while incarcerated, including flooding his cell, breaking a sprinkler head, disruptive behavior, and refusing to follow orders. While the District Court did not enter findings regarding Father's conduct while incarcerated, the evidence was uncontested, admitted by Father, and was necessarily implied by the District Court's finding that Father was unable to conform his conduct to the law. *See In re S.M.*, 2014 MT 309, ¶ 28, 377 Mont. 133, 339 P.3d 23 ("[U]nder the doctrine of implied findings, we may consult hearing transcripts in addition to the written findings. This doctrine holds that where 'findings are general in terms, any findings not specifically made, but necessary to the determination, are deemed to have been implied, if supported by the evidence.'") (citation omitted). Father argues that his treatment plan required only that he refrain from committing further criminal offenses, and that the State has never charged him or proven the elements of a crime arising out of these incidents. However, while he was not criminally charged, Father's admitted property destruction could well have supported a charge. The larger point is that Father was clearly not conforming his conduct to the legal requirements of his incarceration, and therefore not achieving the "long-term change and . . . lasting stability" required by the treatment plan for him to parent a child.

¶26 This evidence represents more than a "mere scintilla" in support of the District Court's conclusion that Father had an inability to conform his conduct to the law, rendering the treatment plan unsuccessful. Given the presumption that termination was

in J.B.'s best interests, *D.B.*, ¶ 40, and that a treatment plan may be found unsuccessful "even if the parent has completed all the required tasks," *D.F.*, ¶ 36, we cannot conclude the District Court's finding that the treatment plan was unsuccessful was clear error. The termination of Father's parental rights was therefore not an abuse of discretion.

¶27 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

Justice Laurie McKinnon, concurring.

¶28 I agree with the Court that the District Court's termination of Father's parental rights to J.B. pursuant to § 41-3-609(1)(f), MCA, was not an abuse of discretion; that there was substantial evidence in the record supporting the court's findings; and that the court correctly applied the law. The evidence establishes that, although not required given the provisions of § 41-3-609(4)(c), MCA, an appropriate treatment plan was approved by the court, but was not successful because Father remained unfit and unable to provide J.B. with parental care. I would affirm the District Court, however, on the alternative basis that Father had his rights to J.B.'s sibling, E.B., involuntarily terminated and that the circumstances relating to the prior termination were relevant to his ability to adequately care for J.B.

11

¶29 The applicable criteria for termination of Father's rights are set forth in § 41-3-609(1)(a-f), MCA.[1] The State relied upon two of the criteria in its petition seeking termination: subsection (1)(f)—that J.B. was adjudicated a Youth in Need of Care, an appropriate treatment plan was approved, but unsuccessful, and Father's condition was not likely to change within a reasonable time; and subsection (1)(d)—that Father had subjected a child to the circumstances listed in § 41-3-423(2)(e), MCA, in that Father had his "parental rights to [E.B.] involuntarily terminated and the circumstances related to the termination of parental rights are relevant to Father's ability to adequately care for [J.B.]." We have explained that "[a] prior termination, followed by a parent's demonstration of continuing unfitness, indicates that decisive termination of parental rights is the best way to protect a child's welfare." *In re J.W.*, 2013 MT 201, ¶ 39, 371 Mont. 98, 307 P.3d 274 (internal quotation and citation omitted); *In re T.S.B.*, 2008 MT 23, ¶ 48, 341 Mont. 204, 177 P.3d 429 (citation omitted) ("circumstances of a prior termination continue to be relevant in a later termination of a sibling under §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, unless the circumstances have changed"); *In re A.H.D.*, 2008 MT 57, ¶ 21, 341 Mont. 494, 178 P.3d 131; *In re A.P.*, 2007 MT 297, ¶ 30, 340 Mont. 39, 172 P.3d 105.

---

[1] I believe this Court incorrectly stated in *A.T.*, that "[the Department] could have requested termination of father's parental rights pursuant to § 41-3-609(4)(c), MCA." *A.T.*, ¶ 23. The criteria for termination are set forth in subsection (1) of § 41-3-609, MCA, and not subsection (4)(c). Section 41-3-609(4)(c), MCA, addresses whether a treatment plan is required in evaluating criteria pursuant to (1)(f), and does, not by itself, establish a basis for termination.

¶30     In Father's prior termination for abandoning E.B., Father chose not to participate in the legal proceedings and, as here, was unwilling to put the needs of E.B. ahead of his own interests.  As here, Father was unavailable to parent E.B. because of criminal activity, including periods of incarceration, and demonstrated a lack of initiative or interest in parenting E.B.  Father ignored efforts by the Department to establish visits and contact with E.B. and ignored court orders to appear at the prior termination proceeding, just as he has ignored court orders relevant to these proceedings.  In the instant proceedings, Father testified he has five children, ages ten and younger—one of whom is deceased and one of whom his rights have been terminated.  Father's parenting with respect to two of his other children has been limited to occasionally "writing letters," a few visits in between periods of incarceration, and phone calls.  However, those communications are not recent because Father is uncertain about where those children, C. and X., live because he has "lost contact" with their respective moms.  Father has failed to adequately provide for his children by remaining unemployed or incarcerated and demonstrates inadequate initiative to provide parental care for his children.

¶31     The District Court listened to this testimony and took judicial notice of two sentences for which Father would remain incarcerated for several years.  Father, with respect to all of his children, has never parented and demonstrates a clear propensity to engage in criminal behavior knowing the consequences of incarceration will remove him from his children's lives.  The District Court's finding that the circumstances leading to the prior termination of Father's rights to E.B. remained relevant is supported by

substantial evidence in the record which establishes Father has refused to take the initiative to parent any of his children. Father's termination of E.B. was a result of his demonstrated lack of interest and inability to make himself available to E.B. and is probative of Father's conduct in the instant proceedings—Father has similarly chosen to be absent from J.B.'s life and remains unavailable to parent.

¶32 The guiding principle in determining whether to terminate parental rights is always the best interests of the child and the district court is bound to give primary consideration to the physical, mental, and emotional conditions and needs of the child—which take precedence over parental rights. Section 41-3-609(3), MCA; *In re K.J.B.*, 2007 MT 216, ¶ 29, 339 Mont. 28, 168 P.3d 629. Here, there was substantial evidence to support the District Court's findings that the circumstances surrounding Father's prior termination remained relevant to his inability to parent J.B. Indeed, I believe Father's lack of initiative to make the necessary changes in his life to adequately parent was exhibited in both termination proceedings. The termination criteria set forth in §§ 41-3-609(1)(d) and -423(2)(e), MCA, and relied upon by the District Court, is supported by substantial evidence.

/S/ LAURIE McKINNON

Justice Beth Baker, dissenting.

¶33 I would reverse the termination of Father's parental rights on the record before the Court. The Department's termination request focused on Father's failure to comply with

14

his treatment plan pursuant to § 41-3-609(1)(f), MCA, and the Department failed to meet its burden of proof under that statute.

¶34 I do not take issue with the Court's analysis of the law. In particular, I agree that whether the treatment plan was appropriate is not properly before us in this appeal and that, under our precedent, the District Court could not conclude that Father's treatment plan was unsuccessful by virtue of his incarceration status alone, when that status "was known and considered by the Department when formulating the plan." Opinion, ¶ 20.

¶35 "The Department has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been satisfied." *In re K.L.*, 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691. As the Court observes, the Department sought termination primarily under § 41-3-609(1)(f), MCA. The District Court's single finding addressing § 41-3-609(1)(f)(i), MCA, stated that "Father did not successfully complete his treatment plan because he has been incarcerated since the inception of this case and was not released from his incarceration so that he could parent [J.B.], Jr." But Father's treatment plan did not require that he be released from incarceration. The Phase I plan contemplated that Father would remain incarcerated throughout that Plan's duration.

¶36 The Department offered no evidence at the termination hearing that Father had not complied with the tasks set forth in the treatment plan. Child Protection Specialist Amanda Graziano was the State's only witness who testified regarding Father's compliance with his treatment plan. Graziano testified extensively about Mother's failure to complete her treatment plan, including Mother's chemical dependency issues,

15

substance abuse, use of illicit drugs, and inability to obtain adequate housing for herself. In contrast, when asked whether Father had met the goals and addressed the Department's concerns through his treatment plan, Graziano's only explanation was that Father "was not able to follow through" because he had been incarcerated "for the duration of the case." On cross-examination, Graziano admitted that Father had been present at all hearings throughout the case and that the Department had been made aware of Father's status with the Department of Corrections (DOC) throughout the proceedings.

¶37 Father testified that during his incarceration he had completed one group therapy program and was in the process of completing two other group therapy programs. He also testified that he had not had any disciplinary issues while incarcerated with the DOC. Father explained that he was signed up to go to Connections Corrections and believed that after completing that program he would be able to be a better parent for his son. Father stated that when he gets to pre-release he intends to take parenting classes and participate in outpatient counseling programs.

¶38 Although Father acknowledged in his testimony that he had acted out during his detention at the Missoula Assessment and Sanctions Center (MASC) while awaiting DOC placement, he had since been admitted to the Sanction Treatment Assessment Revocation and Transition (START) program and was in full compliance with all conditions of his confinement. His case manager, Patrick McGee, testified that Father had been "very compliant" and "positive" during his time at START and that Father had completed "whatever is necessary," including participating in mental health and chemical

dependency counseling. McGee also testified that Father was administratively transferred out of the boot camp program because it "was not a good fit for him," and that Father had not had any disciplinary problems during his incarceration with the DOC. The Department offered no evidence that Father had any disciplinary infractions throughout his incarceration—including the incidents that Father acknowledged—and the District Court did not premise its decision on Father's "disruptive behavior" while at MASC.

¶39 The Department also presented no evidence that Father's incarceration was expected to be long-term. There are many parents who serve time in prison without losing all rights to their children. Further, although the Department presented evidence regarding the prior termination of Father's rights to another child, it did not seek to forego the requirements of a treatment plan by filing its petition under § 41-3-609(4)(a) or (c), MCA. *See A.T.*, ¶ 24. The Court does not rely on the prior termination or long-term incarceration in affirming the District Court. Rather, the Court essentially concludes that Father's rights as a parent may be terminated because—despite the lack of any affirmative evidence from the Department—he acknowledged acting out while at the detention center and failing to follow an order. Opinion, ¶ 25. That is an awfully thin reed, and one the District Court did not even mention in its findings of fact. Rather, as noted, the court relied exclusively on Father's incarceration to determine that he had not complied with his treatment plan. The Department well may have adequate grounds for termination in this case, particularly given Father's history and the prior termination of

17

his parental rights to another child. It is perhaps the unlikelihood of Father's ultimate success that influences the Court's decision today. But the requirements of the law must be met, and the ruling has implications beyond this case. Having invoked § 41-3-609(1)(f), MCA, and given Father a treatment plan, the Department is bound to prove the elements of that statute before asking the court to terminate his rights. I would conclude that the Department failed to meet its burden.

/S/ BETH BAKER